78

THE TEXAS COMPANY (SOUTH AMERICA) LTD., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9584. Promulgated July 18, 1947.

*Benjamin H. Bartholow*, *Esq.*, and *Clayton E. Turney*, *Esq.*, for
the petitioner.
*Walt Mandry*, *Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: This case involves a deficiency in income tax. The
petitioner requests a redetermination of deficiencies asserted as
follows:

| | |
|---|---|
| 1938 | $2, 452. 18 |
| 1940 | 4, 389. 96 |
| 1941 | 3, 883. 72 |
| 1942 | 75, 322. 88 |

Petitioner claims an overpayment in income tax for 1941 in the
amount of $85,635.25. The question presented is, When does the tax
imposed by the Brazilian Government under article 174, Decree No.
17390, as amended in 1932, on income belonging to residents abroad,
accrue for the purpose of foreign tax credits under sections 131 (a)
of the Revenue Act of 1938 and of the Internal Revenue Code?

The facts in this case are all stipulated or agreed to in the plead-
ings, and we adopt them as our findings. We set forth herein only
that portion thereof which we deem necessary for this opinion.

Petitioner is a corporation organized under the laws of West Vir-
ginia, with its principal office in New York City, and it is engaged
in the business of marketing petroleum products in the Republic
of Brazil. For the calendar years 1938, 1940, 1941, and 1942 it filed
its Federal income tax returns, prepared upon the accrual method
of accounting, with the collector of internal revenue for the third
district of New York. On its return for each of the years involved
in this proceeding the petitioner signified its desire to have the bene-

fit of section 131 of the applicable statute granting a credit for foreign income taxes. Forms 1118, "Statement in Support of Credit Claimed by Domestic Corporation for Taxes Paid or Accrued to a Foreign Country or a Possession of the United States," were filed.

The law of the Republic of Brazil imposed a general corporate income tax at the rate of 6 per cent during the years 1937 to 1942, inclusive. Petitioner made annual returns of its income and paid the 6 per cent tax thereon. Respondent has allowed foreign tax credit for the 6 per cent general corporate income tax, which is therefore not involved in this proceeding.

During the years 1937 to 1942, inclusive, article 174 of Decree No. 17390 of July 26, 1926, of the Republic of Brazil, as amended by Decree No. 21554 of June 20, 1932, imposed, in addition to the corporate income tax generally applicable, a supplemental tax on income belonging to residents abroad. This tax is referred to hereinafter in this stipulation as the foreign owner's income tax. This tax was required to be deducted at the source upon the payment, remittance, utilization, or crediting of the income. Article 174 further provided that the amount of the tax must be paid to the government before the income was remitted or paid over, and that, for the making of a remittance abroad, the bank must require presentation of a receipt for the tax. A correct English translation of this article is as follows:

Article 174. A tax of eight per cent is payable on income belonging to residents abroad, except in the case of profits or dividends which, having already paid proportional tax in the possession of the firm or company, will only pay another four per cent when they belong to a resident abroad.

Paragraph 1. The tax referred to in this article will be deducted at the actual source, when handing over, remitting, utilizing or crediting the income.

Paragraph 2. The amount of the tax must be paid to the government before the income is remitted or paid over; and the bank, for the making of the remittance abroad, must require presentation of the receipt.

The rate of tax imposed by article 174 was made 8 per cent, without exception, by Decree Law No. 1168 of March 22, 1939, of the Republic of Brazil.

The taxes in controversy are income taxes for the calendar years 1938, 1940, 1941, and 1942. The following statement shows, as to each year, the amount of deficiency as admitted by the petitioner, the amount of overpayment claimed by the petitioner, and the amount of taxes in controversy:

| Calendar year | Deficiency determined by Commissioner | Deficiency admitted by petitioner | Overpayment claimed by petitioner | Amount of tax in controversy |
|---|---|---|---|---|
| 1938 | $2,452.18 | $6.12 | | $2,446.06 |
| 1940 | 4,389.96 | | | 4,389.96 |
| 1941 | 3,883.72 | | $85,635.25 | 89,518.97 |
| 1942 | 75,322.88 | 38,160.88 | | 37,162.00 |

Article 188 of Decree Law No. 4178 of March 13, 1942, of the Republic of Brazil, provides a period of limitation upon the assessment of income taxes. A correct English translation of this article is as follows:

Article 188.—The right to assess the income tax is extinguished upon the lapse of five years after expiration of the corresponding fiscal year.

(1) The power to effect a new, or an additional, assessment is voided by prescription after five years from the date of termination of the year wherein the previous assessment was made.

(2) The said five-year period is interrupted by any departmental operation or demand which becomes necessary for purposes of revision or for assessment and which is communicated to the taxpayer, and recommences upon expiration of the year wherein such procedure is effected.

In the years prior to 1942 petitioner, a resident abroad under the law of Brazil for all the years here involved, made no remittance of its profits to its office in the United States, and made no returns or payments of foreign owner's income tax with respect to its profits for any year.

In December 1942 petitioner received from the income tax authorities of the Republic of Brazil an order instructing petitioner to pay prior to the end of the year the 4 per cent foreign owner's income tax applicable to the year 1937 and the 8 per cent tax applicable to the unremitted portion of the 1941 profits. Petitioner on December 29, 1942, paid foreign owner's income tax on income of the year 1937 and on the portion of income of the year 1941 as to which the tax had not been previously paid.

The following table shows the dates and amounts of Brazilian currency of the payments by petitioner in 1942 and 1943 of foreign owner's income tax on income of the years 1937 to 1942, inclusive, the rate thereof, the amounts of income on which it was computed, and the United States dollar equivalent of the tax paid:

| Date of payment | Year of income | Amount of income | Rate of tax | Amount of tax | |
| --- | --- | --- | --- | --- | --- |
| | | | | Brazilian currency | U. S. currency |
| 2-5-42 | 1938 | ¹ Rs. 1:253:926$607 | 4% | Rs.  50:157$100 | $2,446.06 |
| 2-5-42 | 1940 | 4:091:291$699 | 8% | 327:303$300 | 15,961.93 |
| 7-16-42 | 1941 | 9:914:315$000 | 8% | 793:145$200 | 38,764.97 |
| 8-20-42 | 1941 | 3:685:568$000 | 8% | 294:845$400 | 14,403.49 |
| 12-29-42 | 1941 | ² Cr. 9.287.302,40 | 8% | Cr. 742.984,30 | 36,350.51 |
| 12-29-42 | 1937 | 8.318.531,00 | 4% | 332.741,21 | 16,143.08 |
| 10-8-43 | 1942 | 9.480.158,70 | 8% | 758.412,70 | 37,162.00 |

¹ Rs.=Milreis.
² Cr.=Cruzeiros.

During the year 1942 petitioner remitted to its office in the United States its profits for the years 1938 and 1940 and part of its profits for 1941. The first remittance was on March 5, 1942, and the last

on August 24, 1942. Petitioner made no further remittance of profits to its office in the United States during 1942 or 1943.

Petitioner did not reflect in its accounts for the years 1937 to 1941, inclusive, any liability for the foreign owner's income tax for those years and did not claim any credit for that tax on its Federal income tax returns for the years 1937 to 1941, inclusive. Petitioner did reflect liability for the foreign owner's income tax for the year 1942 in its accounts for that year, and claimed credit for the foreign owner's income tax for the year 1942 on its Federal income tax return for that year.

Respondent has allowed no credit under section 131 of the Internal Revenue Code and prior revenue acts in determining petitioner's Federal income tax liability, for any taxable year on account of the foreign owner's income taxes paid by petitioner to Brazil in 1942 and 1943 for income received from 1937 to 1942, inclusive.

Petitioner has filed with respondent the evidence required by respondent's regulations in support of a claim for credit under said section 131 for such foreign owner's income taxes.

During the years 1937 to 1942, inclusive, petitioner did not have any dispute or controversy with the Brazilian Government as to petitioner's liability for foreign owner's income tax or the time when such tax was payable.

Petitioner paid to the collector of internal revenue for the third New York district income tax for the taxable year 1941 in the following amounts and on the following dates:

| | |
|---|---|
| Mar. 12, 1942 | $75,000.00 |
| June 13, 1942 | 61,459.52 |
| Sept. 15, 1942 | 68,229.76 |
| Dec. 11, 1942 | 68,229.75 |

An agreement between petitioner and respondent, pursuant to section 276 (b) of the Internal Revenue Code, to extend the time for assessing petitioner's income tax for the taxable year 1941 to June 30, 1946, was duly executed on December 6, 1944.

On January 28, 1943, petitioner duly filed with the collector of internal revenue for the third New York district a claim for refund of income tax for the calendar year 1941 in the amount of $88,830.53, based on allowability of credit, under section 131 of the Internal Revenue Code, for foreign owner's income tax on income of that year.

Petitioner paid to respondent income tax for the calendar year 1942 in the following amounts and on the following dates:

| | |
|---|---|
| Mar. 13, 1943 | $2,250.00 |
| May 13, 1943 | 8,353.87 |
| Sept. 15, 1943 | 5,286.75 |
| Dec. 9, 1943 | 5,256.37 |

In addition to the above facts, the petitioner offered in evidence, by a witness who did not profess to be learned in Brazilian law but acted solely as an interpreter of Portuguese, certain translated excerpts from pamphlets printed in Portuguese, together with the original pamphlets. These excerpts purported to include a ruling of the First Taxpayer Council of the Ministry of Finance of July 4, 1938; a ruling of the Income Tax Division, Ministry of Finance October 22, 1943; a ruling of the Ministry of Finance, October 5, 1944; and a third ruling of the Ministry of Finance of July 6, 1945. The pamphlets in which these documents appeared were designated "Diario Oficial" and were purported to issue from "Imprensa Nacional—Industria Do Journal."

Since foreign law is to be proved as facts are proved and since we do not have the testimony of any expert in Brazilian law, either as to the official character of the documents offered or as to the law on the points discussed therein as affected by statutory amendments and judicial interpretation, this Court adheres to its tentative ruling when the documents were first offered in evidence and holds that these documents are inadmissible. The issue herein must therefore be resolved on our understanding of the law as set forth in the stipulation.

The contentions of the respondent are well set forth in his brief as follows:

The petitioner, a domestic corporation engaged in the business of marketing petroleum products in Brazil, is on the accrual basis. It did not accrue on its books any amount for these taxes in the taxable years in question, did not make any annual returns or payments on these taxes to Brazil, and did not in its Federal income returns for such years claim any foreign tax credit with respect to such taxes, except it did accrue on its books for the year 1942 an amount with respect to such taxes and claimed a foreign tax credit therefor in its Federal income tax for that year. During the year 1942 petitioner remitted to its home office in the United States a portion of its profits earned in prior years, and immediately prior to the date of such remittances paid to Brazil the tax with respect to such remitted amounts. The respondent concedes that the petitioner is entitled to a foreign tax credit for the year 1942 with respect to the taxes which it paid on the profits remitted in that year, but did not allow any credit for that year in order to protect the interest of the Government in view of petitioner's contention that the credits for such taxes were allowable for prior years.

\*        \*        \*        \*        \*        \*        \*

The respondent concedes that the tax in question is an "income tax" within the meaning of section 131 (a). (It. 3313, C. B. 1939–2, 171). The parties have stipulated that the petitioner is upon the accrual basis and, consequently, the sole question presented for decision is whether the tax accrued annually, as contended by the petitioner, or accrued, as contended by the respondent, in the year when the income was handed over, remitted, utilized or credited, which was not until the year 1942.

Thus the respondent objects to the allowance of a tax credit for foreign taxes paid for 1938, 1940, and 1941 for two reasons: (1) The taxpayer did not actually accrue said payments on its books; and (2)

the income of the taxpayer was not subject to the Brazilian tax for non-residents until said income was sent out of Brazil, which was in 1942.

We are unable to agree with respondent's contention that the failure of the taxpayer to accrue these taxes during the years in which they were incurred deprived the taxpayer of a tax credit during those years. It is, of course, true that the books of account of any individual present evidence of high value when the conditions of those books reflect against the interest of the individual for whom they are kept. However, such evidence is not of such overweening power as to disprove the existence of outside facts when those facts are clearly evident from other sources. In this case the outside fact to be proved was whether or not the taxpayer had incurred liability for the additional tax on nonresident income. It is our opinion that that liability is to be established by the law of Brazil, and the fact that the account books of the taxpayer did not reflect the accrual of that tax liability nor set up a reserve therefor would not affect the ultimate fact of the liability for the tax.

The Brazilian Government imposed a 6 per cent income tax on all corporations upon an annual basis and provided that from 1937 an additional tax of 4 per cent should be imposed on the income of non-residents. In 1940, 1941, and 1942 this additional tax was increased to 8 per cent. Once the law thus fixed a rate, and when the amount of income was evident at the end of the year, it is our opinion that the tax was incurred, regardless of reserves or lack of reserves appearing on the taxpayer's books. When all events have occurred which control any tax deduction, the same is allowable even though the books may be silent on the deduction. See *Wolf Mfg. Co.*, 10 B. T. A. 1161; *Armstrong Cork Co.*, 24 B. T. A. 1; *Aluminum Casting Co.* v. *Routzahn*, 282 U. S. 92.

All of the taxpayer's returns requested the benefit of the provisions of section 131 of the Internal Revenue Code. Subdivision (d) of that section provides:

(d) YEAR IN WHICH CREDIT TAKEN.—The credits provided for in this section may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued * * *.

Respondent, however, in urging that the additional tax was merely a tax on the removal of the income from Brazil, argues that therefore the tax was contingent, was not an annual levy, and was therefore deductible only in 1942, when the remittances were sent out of Brazil to the United States.

We are also unable to agree with this argument. It is admitted that this tax is an income tax. The Brazilian statutes imposed a five-year limitation on the collection of all delinquent income taxes. No exception is made of the additional tax involved in this proceeding. It would therefore seem to be evident that the legislative intent was that

the tax became due as any other income tax, which is to say, as earned annually. Certainly the representatives of the Brazilian Government who demanded payment of this additional tax in December of 1942, just before the statute of limitations had run on the 1937 tax and before any remittance of income had been made by the taxpayer to its main office in the United States for that year, considered the tax due regardless of remittances, and due on an annual basis. The representatives demanded payment of the tax specifically for the years 1937 and 1941. We certainly can not assume that the Brazilian Government, in making this demand, was acting contrary to the laws of Brazil or that the taxpayer, in subsequently making the large payments to Brazil, was not complying with Brazilian law. Surely, if anything is to be presumed from the conduct of the taxpayer, as the respondent suggests must be done in considering the taxpayer's books, the fact that the taxpayer actually paid this tax before it had even attempted to remit to the United States would raise a stronger presumption in favor of the existence of the tax liability.

It will be noted that the statute levying the nonresident tax provides that it "will be deducted at the actual source, when handing over, remitting, utilizing or crediting the income." We are unable to think of anything that the taxpayer could have done with its income earned in Brazil which would exclude it from immediate liability for this tax. If it deposited the income in its bank account the money would be utilized to bolster the taxpayer's bank credit. If it converted it into precious metals or jewels for the purpose of smuggling the same out of Brazil, it would be utilizing this money for such purpose. Whatever it would do with the money, the money would be "utilized" for doing whatever was done.

Following the paragraph of the statute which provides for the imposition of the tax, there is a second paragraph providing that before any Brazilian income is "remitted or paid over to the non-resident, the bank for the making of the remittance abroad, must require presentation of the receipt." The mere reading of this statute indicates that the purpose of this provision is to supply an additional protection to prevent nonresidents of Brazil, and particularly those who operated in Brazil for a time too short for the revenue agents to inspect their accounts, from withdrawing their funds beyond the jurisdiction of Brazil without having paid the tax. This provision is not a condition limiting the operation of the previous paragraph in the act. It merely supplies a part of the machinery for putting the prior provisions of the act into execution.

In addition to the above reasoning growing out of the provisions of the Brazilian statute, the petitioner's position is fortified by the line of decisions following *United States* v. *Anderson*, 269 U. S. 422, which

hold that ordinarily income taxes accrue in the year in which the income is earned on which the tax is imposed. None of the facts in the case at bar remove the rights of this taxpayer from the law as laid down in the *Anderson* case.

Our conclusion is that the respondent erred in not allowing petitioner foreign tax credits in each of the taxable years for the foreign owner's income taxes imposed by the laws of Brazil upon its Brazilian income for those years, even though these taxes were not accrued on its books and were not paid until 1942 and 1943.

*Decision will be entered under Rule 50.*