**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Medardo Alvero CRUZ,
Defendant-Appellant.**

No. 81–5371.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1983.

Benedict P. Kuehne, Donald I. Bierman, Marc Cooper, Charles L. Ruffner, Miami, Fla., for defendant-appellant.

Joel N. Rosenthal, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

HATCHETT, Circuit Judge:

In this criminal case, with prosecution under 26 U.S.C.A. § 7201, we must decide whether a jury instruction regarding establishment of a foreign tax credit under 26 U.S.C.A. § 901 was correct. Finding the instruction correct, we affirm.

In May, 1979, a grand jury investigation focused on the appellant, Jose Medardo Alvero Cruz, because information provided by a reliable government source indicated that Cruz was involved with narcotics and tax fraud activities. The investigation led to inquiries in Spain where information showed that Cruz lived a lavish lifestyle and maintained large bank accounts. In order to verify this information, the government addressed Letters Rogatory and a Request for Judicial Assistance to the Spanish authorities through the State Department. These letters requested the Spanish authorities to assist in obtaining the original records of Cruz's bank accounts in Spain. The government also sought records of Spanish merchants from whom Cruz and his wife had purchased merchandise or services and public records concerning ownership of a condominium in Madrid.

The first set of Letters Rogatory and Requests for Judicial Assistance yielded defective evidence and a second set was required. The first set, however, did yield sufficient information to provide a basis on which Cruz was indicted on four counts of tax evasion under 26 U.S.C.A. § 7201. The indictment alleged that Cruz had tax deficiencies for the years 1975, 1976, 1977, and 1978.

Before the second set of Letters Rogatory were presented to the Spanish authorities, a hearing was held in the district court. Over the objection of Cruz, the district court granted the government's request for the presentation of the Letters Rogatory and Requests for Judicial Assistance, but with changes. One change required the government to attach a copy of the income tax evasion indictment. Upon request of the Letters Rogatory and Request for Judicial Assistance, the Spanish authorities complied. Provided with this information, consisting mostly of the bank account statements, the government's prosecution followed.

During a pre-trial conference, Cruz objected to the use of all evidence obtained through the Letters Rogatory and Requests for Judicial Assistance. The district court again overruled the objections, but admonished the government that such evidence would be subject to "a rigid test of scrutiny" to insure that it was properly obtained. In addition to the Spanish bank accounts, the government also sought to utilize the testimony of an informant who allegedly knew of Cruz's source of income for the year 1975. Cruz, upon learning of this testimony and its possible marijuana crime implications, stipulated that the government's income figures for the 1975 tax year were correct. As a result of the stipulation, the informant did not testify.

During the trial, the government sought to prove tax fraud through the "net worth method." Cruz's defense, based on 26 U.S.C.A. § 901 of the Internal Revenue Code, attacked the tax deficiency assessed by the Internal Revenue Service. Cruz contended that no tax deficiency existed because as a citizen of the Dominican Republic, a country which taxes income earned worldwide, his tax liability to it had accrued. Cruz asserted this defense in spite of the fact that he had filed no Dominican tax return for the years in question, and had not paid the tax at the time of trial. Because this tax liability had accrued to the Dominican Republic under 26 U.S.C.A. § 905, and the Dominican Republic's statute of limitations had not expired for collecting the tax, he asserted that the availability of this foreign tax credit would mitigate any tax liability owed to the United States.

■ At the close of the trial, the district court gave the following jury instruction on the issue of the foreign tax credit:

> For a foreign tax credit to accrue under United States tax laws you must find that with regard to the foreign tax all events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it. That is, you must find that the foreign government is aware of the income that is taxable in their country; that the foreign government has computed the tax due on that income, and that the Defendant has acquiesced to or failed to contest that amount of tax due to the foreign government.

Cruz objected to the instruction.

The jury found Cruz guilty on all four counts of tax evasion. He was sentenced to four years of imprisonment on Count I, and two years of imprisonment on each of Counts II, III, and IV, to run consecutively. After trial, Cruz made partial payment to the Dominican Republic taxing authorities.

Cruz offers a number of arguments which are of an evidentiary nature and which we find without merit. On the primary issue, Cruz argues that the district court erred in its instruction to the jury because it misdefined "accrued." We do not agree.

■ Before an accused can be convicted of tax fraud in violation of 26 U.S.C.A. § 7201, the government must prove three elements: (1) a tax deficiency, (2) an affirmative act, and (3) willfulness. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Dwoskin,* 644 F.2d 418, 419 (5th Cir.1981). Because section 7201 defines a criminal offense, the government must prove each element beyond a reasonable doubt. *Dwoskin,* 644 F.2d at 419. In this case, Cruz sought to strike at the very heart of the government's tax fraud case. Instead of concentrating on the willfulness

element, as is usually the situation, Cruz attacked the tax deficiency utilizing sections 33(a) and 901(b) of the Internal Revenue Code.

Section 33(a) provides: "The amount of taxes imposed by foreign countries and possessions of the United States shall be allowed as a credit against the tax imposed by this chapter to the extent provided in section 901." Section 901(b)(3) provides: "In the case of an alien resident of the United States and in the case of an alien individual who is a bona fide resident of Puerto Rico during the entire taxable year, the amount of any such taxes paid or accrued during the taxable year to any foreign country ...." In this instance, it is undisputed that Cruz, a Dominican Republic citizen, is a resident alien in the United States. He argues that therefore he is entitled to take a foreign tax credit against taxes imposed by the United States.

Section 905(a) provides when a foreign tax credit may be taken and allows the taxpayer the option of electing between the cash or accrual method of reporting. *See United States v. Campbell,* 351 F.2d 336, 338 (2d Cir.1965); 2 R. von T. Rhoades & M.J. Langer, Income Taxation of Foreign Related Transactions, § 5.03[4][a]. Cruz, a cash basis taxpayer, elected to accrue his foreign tax credit. The right to take the foreign tax credit is open for ten years. 26 U.S.C.A. § 6511(d)(3); *Hart v. United States,* 585 F.2d 1025 (Ct.Cl.1978) (en banc). Cruz contends that since he elected the accrual method of reporting, he is entitled to the credit at any time within the ten year statute of limitations. The problematic aspect of this case is in determining whether Cruz is entitled to a credit for a Dominican Republic tax which has not been reported, determined, paid, or contested.

■ The Supreme Court established the general rule relating to the accrual of income, deductions, or credits for income purposes in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); and *Dixie Pine Products Co. v. Commissioner of Internal Revenue,* 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944). That rule

provides that a tax is deemed to accrue when all events have occurred which fix the amount of the taxpayer's income, deductions, or credit, and determines the liability of the taxpayer for tax, although there has not yet been an assessment or maturity. *Anderson,* 269 U.S. at 441, 46 S.Ct. at 134; *Dixie Pine Products Co.,* 320 U.S. at 519, 64 S.Ct. at 365. The accrual of the foreign tax credit is essentially governed by this rule. 2 R. von T. Rhoades & M.J. Langer, Income Taxation of Foreign Related Transactions, § 5.03[5].

■ In the case of the foreign tax credit, the final event which fixes the amount of the credit is the levy of the tax. *Campbell,* 351 F.2d at 338; *Cuba Railroad Co. v. United States,* 124 F.Supp. 182 (S.D. N.Y.1954), 135 F.Supp. 847 (S.D.N.Y.1955), aff'd 254 F.2d 280 (2d Cir.1958), *cert. denied,* 358 U.S. 840, 79 S.Ct. 64, 3 L.Ed.2d 75 (1958); *see Russell-Miller Milling Co. v. Helvering,* 69 F.2d 392, 393 (D.C.Cir.1934). In the event the taxpayer decides to contest the foreign government's assessment, the taxpayer must claim the foreign tax liability as a credit against the United States tax in the year in which the liability has been finally determined. *Cuban Railroad Co.,* 124 F.Supp. 182. Once the liability becomes fixed, after the dispute has been resolved, the accrued foreign tax liability "relates back" to the year in which it was levied. Revenue Ruling 58–55, 1958–1 C.B. 266; *see Campbell,* 351 F.2d at 338. In the instant case, Cruz did not contest his tax liability to the Dominican Republic. He took no action relating to the Dominican Republic tax (before trial).

■ In construing the requirements of section 905, we will not be constrained by intricate technicalities which would create a haven for federal tax evasion. When interpreting statutes, we are required to give a practical interpretation which will not produce an absurd result. *State of Alabama ex rel. Graddick v. Tennessee Valley Authority,* 636 F.2d 1061, 1066 (5th Cir.1981). If we accept Cruz's interpretation of section 905, an accused taxpayer will always avoid successful prosecution. For example, under

Cruz's interpretation, a taxpayer in his position could wait and pay no tax, either to the United States or the Dominican Republic until the United States authorities became aware of an irregularity in his tax return. Once discovered, he could either pay or immediately admit the foreign tax and claim the retroactive United States tax credit under section 6511(d)(3), as an absolute defense. Thus, he could fix the amount of the foreign tax liability which would automatically entitle him to the foreign tax credit. If the fraudulent omission is overlooked, both the United States and the Dominican Republic are cheated of taxes. In short, the taxpayer is able to gamble that neither government will become aware of his tax liability. Additionally, if the United States waits for the ten years allowed by statute for the taxpayer to fix the amount of the foreign tax liability, then the six-year statute of limitations on the section 7201 prosecution lapses. Against this background, we must approach this case from a practical viewpoint.

■ As in *Campbell,* the determination of criminal liability is the real issue at stake, not merely the question of Cruz's right, as in a civil case, to a foreign tax credit. 351 F.2d at 340. Since this is a criminal matter, the government need only establish that Cruz received unreported income, and that his nondisclosure resulted in a tax deficiency. 351 F.2d at 338. The record reveals that the government provided these elements. At this point, Cruz had the burden of negating the deficiency by showing that it was either wrongly computed, cancelled by another deduction or, in this instance, a credit not·yet allowed. Cruz sought to prove that the deficiency was negated by showing a credit not yet allowed.

■ Cruz presented, primarily by expert testimony, four items of evidence as proof of his right to a foreign tax credit: (1) that he was a resident of the Dominican Republic, (2) that he had determined his Dominican tax liability, (3) that the Dominican Republic's statute of limitations had not expired for the collection of taxes, and (4) that his Dominican Republic tax liability for the respective years were final. No proof, however, was offered which indicated that Cruz fixed the amount of his foreign tax liability prior to trial. Only after the discovery of the deficiency and trial did Cruz fix the amount of his foreign tax liability. His after trial payment of the foreign tax liability cannot be used on appeal to overturn the conviction.[1] *United States v. McCormick,* 67 F.2d 867, 870 (2d Cir.1933), *cert. denied,* 291 U.S. 662, 54 S.Ct. 438, 78 L.Ed. 1054 (1934). In this respect, the jury instruction given by the district court was correct. The instruction required that there be a firmly established taxable amount owed the foreign government and determined by it before the taxpayer would be entitled to a foreign tax credit. The practical effect of this decision means the tax evader can no longer play one government against the other to defeat an evasion prosecution.[2]

■ We realize the implications of this holding. It now means that when the government begins a section 7201 prosecution of a taxpayer who claims a foreign tax credit under section 905, the government accelerates the time within which the taxpayer may exercise the right to fix the amount of the foreign tax liability and claim the foreign tax credit.[3] We also realize, however, that we are bound to give reasonable interpretations to statutes which are consistent with the intent of Congress. *State of Alabama ex rel. Graddick v. Tennessee Valley Authority,* 636 F.2d 1061 (5th Cir.1981).

---

1. We note that as to 1975, the jury could have found that all income for that year came from sources within the United States. With such a finding, no foreign tax credit would be available.

2. Mindful of the fact that the foreign tax credit is intended to avoid double taxation, we refuse to allow this credit to become a "loophole" that prevents any tax, or prevents prosecution for evasion.

3. The government accelerates the statute of limitations ten year period under section 6511(d)(3).

## CONCLUSION

We therefore hold that the jury instruction given by the district court was correct. We affirm.

AFFIRMED.

KRAVITCH, Circuit Judge, dissenting:

Because I believe the trial judge improperly instructed the jury as to the definition of "accrual" for purposes of the foreign tax credit, I dissent.

Appellant's defense rested on his attempt to demonstrate that no tax deficiency existed in this case because, as a citizen of the Dominican Republic, he was entitled to a foreign tax credit. The presence of a tax deficiency is an essential element of tax evasion.[1] Appellant argued that even though he failed to report the income in question in either the United States or the Dominican Republic, the Dominican Republic tax accrued at the close of each of the tax years involved. This Dominican Republic tax liability entitled appellant to a credit against his United States taxes. Therefore, appellant argues, no tax deficiency existed because there was no United States tax due and owing.

As the majority notes, the trial judge first instructed the jury that for a foreign tax credit to accrue "all events [must] have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it." This instruction was entirely in accord with decades of tax law following the Supreme Court's decision in *United States v. Anderson*, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). By adding an additional gloss to the accepted definition of "accrual," however, the trial judge confused the jury, and thus committed reversible error.

The charge as given by the trial court required the jury to find that the tax had accrued only if the foreign government (1) was aware of the taxable income; (2) had computed the tax due; and (3) the defendant had failed to contest or had acquiesced in the amount of the tax due. This standard is incorrect. The tax on which the credit is based accrues regardless of these conditions. *See Texas Co. v. Commissioner*, 9 T.C. 78, 83 (1947).

The accepted test of accrual that applies generally as well as in the foreign tax credit context is the "all events" test espoused by the Court in *Anderson*.[2] *See* Rev.Rul. 61–93, 1961–1 C.B. 390.[3] Accrual occurs for purposes of the foreign tax credit when the foreign tax liability becomes fixed and determinable. This is not necessarily the same as when the tax is levied, as the majority would hold. Accrual is not dependent upon a formal assessment by the taxing government. A tax liability accrues at the close of the taxing period, when the taxing authority can readily determine the amount of the liability. That the precise amount of income, and therefore tax liability, is not known at the close of the period is irrelevant. It is enough that the amount of the tax is reasonably determinable.

The majority premises its decision on *United States v. Campbell*, 351 F.2d 336 (2d Cir.1965), in which the Second Circuit held that a taxpayer accused of tax evasion could not assert a foreign tax credit as a defense because he did not claim the credit promptly. At the time of the *Campbell* decision, there was a substantial body of

1. The other two elements of tax evasion under 26 U.S.C. § 7201 are an affirmative act constituting evasion and willfulness. Appellant does not dispute the presence of these two elements.

2. The Supreme Court stated the test as follows: In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.

*United States v. Anderson*, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347, 351 (1926).

3. In the Ruling the Service states: [I]t is apparent that, for the purpose of the foreign tax credit, foreign income taxes are considered as accrued in the taxable year in which the taxpayer's liability for such foreign taxes becomes fixed and determinable. Generally such accrual occurs in the United States taxable year within which the taxpayer's foreign taxable year ends.
Rev.Rul. 61–93, 1961–1 C.B. 390, 391.

law holding that a foreign tax credit had to be claimed promptly or else it was lost. Under 26 U.S.C. § 6511(d)(3)(A),[4] however, a taxpayer may now claim the credit at any time within ten years of the date he files his return, even if he chose not to take the credit initially. *See Hart v. United States,* 585 F.2d 1025 (Ct.Cl.1978) (en banc). Thus, one prong of *Campbell* is no longer applicable.

The majority is understandably concerned, as was the *Campbell* court, that a taxpayer might claim a foreign tax credit without ever paying the foreign tax, or that he might avoid tax liability by not reporting the income to either country until the IRS detects the omission. That concern, however, is misplaced in this case, as it was in *Campbell.* Despite the majority's protestations, a taxpayer who avails himself of the "intricate technicalities" of the tax law will not go undetected or unpunished. If the foreign tax is not paid for which the credit is claimed, the IRS can redetermine the taxpayer's United States tax for the year in question. If the foreign country's statute of limitations runs, thus extinguishing the taxpayer's liability for the foreign tax, that taxpayer becomes liable for tax evasion under 26 U.S.C. § 7601 if he fails to make the proper adjustments to his United States returns for the years in question. Where the foreign statute of limitations has not yet run, as appellant claims here, a tax evasion case is not timely. A taxpayer in appellant's position might be indicted under 26 U.S.C. § 7206 for filing a false return if he fails to report the foreign income and the foreign tax credit. In my opinion, the government indicted appellant for the wrong crime at the wrong time. Appellant should have been charged with a violation of § 7206, not § 7201. *See United States v. Taylor,* 574 F.2d 232 (5th Cir.1978) (taxpayer violates § 7206 if he willfully files a false

return with the knowledge that the return is not true and correct as to every material matter, if no taxes are in fact due).

If the Internal Revenue Code bars the availability of a tax evasion prosecution in this situation, then our hands are tied. Congress is the appropriate body to change the law. We cannot effectuate such a change by allowing an improper gloss to be attached to the meaning of "accrual."

Appellant is entitled to an appropriate jury charge on his defense denying the existence of a tax deficiency. Because the instruction denied him that right, I respectfully dissent.

---

4.  26 U.S.C. § 6511(d)(3)(A) provides:

    If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.