**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Marcus Wayne WILLIAMS,**
**Defendant–Appellant.**

**No. 88–7386.**

United States Court of Appeals,
Eleventh Circuit.

June 14, 1989.

Hishon & Ranney, Robert H. Hishon, William R. Asbell, Jr., Dan R. Musick, Atlanta, Ga., for defendant-appellant.

J.B. Sessions, III, U.S. Atty., William H. Steele, Asst. U.S. Atty., Mobile, Ala., Charles Kandt, North Platte, Neb., Robert E. Lindsay, Chief, Crim. Appeals and Tax Enforcement Policy Sec., Tax Div., Dept. of Justice, Washington, D.C., Karen M. Quesnel, Las Vegas, Nev., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

We affirm the convictions and judgments in this criminal tax evasion case holding that where a shareholder, officer, or director diverts unreported funds from his or her corporation, the government is not required to characterize the funds (as dividends, loan, return of capital or otherwise) to prove a tax deficiency to support a conviction under 26 U.S.C.A. §§ 7201 or

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

7203; the government must only prove the diversion and that the taxpayer acted willfully.

## I. FACTS

Marcus Wayne Williams was the sole shareholder, president, and chief executive officer of Technical Fabrications, Inc. ("TFI"). Williams was also a shareholder, president, and chief executive officer of TFI's wholly-owned subsidiary, M.W. Industries ("MWI"). Between 1980 and 1982, several companies breached contracts with TFI. TFI representatives, including Williams, negotiated monetary settlements with these companies. Williams diverted much of the settlement money to his own use. The following transactions are relevant to this case:

(1) In May, 1981, Teledyne Continental Motors paid TFI $90,000 for hurricane damage to a building that TFI leased from Teledyne. TFI deposited the $90,000 into a TFI checking account at Central Bank in Mobile, Alabama. In June, 1981, when TFI closed the Central Bank account, the bank issued a $92,041.14 cashier's check payable to TFI. TFI endorsed the check to Williams who purchased another cashier's check for the same amount. In August, 1981, Williams combined this check with another cashier's check and cash to purchase a $102,245.83 cashier's check payable to the investment firm Merrill Lynch Pierce Fenner & Smith Inc. ("Merrill Lynch"). Williams deposited this check into a personal Merrill Lynch account and bought $100,000 in bonds. Williams did not report the $90,000 on his tax returns. TFI did not record the Teledyne settlement and did not report the $90,000 on its tax returns.

(2) In December, 1981, UOP Corp. paid TFI $170,274 under a cancellation clause in a steel fabrication contract. TFI endorsed the UOP check to Williams who endorsed the check to MWI. MWI deposited the check into a MWI checking account at the First National Bank of Mobile.

Between April and July, 1982, General Electric Environmental Services, Inc. ("GEESI") paid TFI $97,500 for delay in performance of a contract. Williams deposited this money into the MWI account. The UOP and GEESI deposits constituted all but $586 of the MWI account.

Williams subsequently withdrew all the money in the MWI account through checks payable to himself. Williams combined these checks with other funds to purchase cashier's checks. He combined the cashier's checks with cash and deposited $255,285 into his Merrill Lynch account to purchase bonds. Williams reported no income from these transactions on his tax returns. TFI's records failed to reflect the transactions. MWI's tax returns also failed to reflect activity during this time.

(3) In August, 1982, Williams drew a $97,548 check on a TFI account and deposited the check into a personal Robinson–Humphrey Co. account to purchase $100,000 in bonds. Williams ordered a TFI accountant to record the check as for "stock material." Williams did not report the $97,548 on his tax returns.

## II. PROCEDURAL HISTORY

In January, 1988, a grand jury indicted Williams on two counts of attempt to evade federal income tax in violation of 26 U.S.C.A. § 7201 (West Supp.1989).[1] In May, 1988, a jury convicted Williams for one violation of section 7201 and for one violation of willful failure to pay tax in violation of 26 U.S.C.A. § 7203 (West Supp.1989)[2] (a

---

**1.** Section 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($50,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

**2.** Section 7203 provides:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other

lesser included offense of section 7201). In June, 1988, the district court denied Williams's post-trial motions for judgment of acquittal and a new trial. In August, 1988, the district court sentenced Williams to five years in prison and fined him $10,000 for the section 7201 violation. The district court suspended a one-year sentence and a $1,000 fine for the section 7203 violation and placed Williams on five years probation to begin after his section 7201 sentence ends. TFI is currently a debtor in a Chapter 11 bankruptcy proceeding.

## III.  CONTENTIONS OF THE PARTIES

Williams first contends that the district court improperly denied his motion for judgment of acquittal. He argues that the government based its case on a theory that TFI paid Williams constructive dividends. The government, Williams alleges, failed to prove constructive dividends because it offered no proof of TFI's "earnings and profits." Second, Williams contends that the district court erroneously refused to charge the jury on earnings and profits. Third, Williams contends that the district court improperly limited cross-examination of a government witness. Fourth, Williams contends that the district court erroneously failed to compel production of certain materials under the Jencks Act and Fed.R.Evid. 612. Finally, Williams contends that the district court improperly excluded portions of his testimony.

The government contends that the district court correctly denied Williams's motion for judgment of acquittal. The government argues that it proved that Williams received taxable income by diverting TFI funds. The government denies that it needed to characterize the income as constructive dividends and denies that it needed to prove "earnings and profits." As to Williams's other contentions, the government argues that the district court did not abuse its discretion by refusing to give Williams's proposed jury instructions, properly limited Williams's cross-examination of a government witness, properly handled Williams's request for materials under the Jencks Act and Fed.R.Evid. 612, and did not prejudice Williams when it sustained objections to a portion of his testimony.

## IV.  ISSUES

Williams presents five issues on appeal: (1) whether the district court erred in denying Williams's motion for judgment of acquittal because sufficient evidence did not support a finding of a tax deficiency beyond a reasonable doubt; (2) whether the district court committed reversible error by refusing Williams's suggested jury charges concerning earnings and profits; (3) whether the district court abused its discretion by improperly denying Williams an adequate opportunity to cross-examine a government witness; (4) whether the district court erred in refusing to compel production of Jencks Act documents or to compel the production of documents pursuant to Fed. R.Evid. 612; and (5) whether the district court abused its discretion by excluding a portion of Williams's testimony.

## V.  DISCUSSION

### A.  Sufficiency of the Evidence

■ The government must prove three elements beyond a reasonable doubt to support a section 7201 conviction: (1) a tax deficiency; (2) an affirmative act constituting an evasion or attempted evasion of the tax; and (3) willfulness. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *United States v. Cruz*, 698 F.2d 1148, 1150 (11th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 391, 78

penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. In the case of any person with respect to whom there is a failure to pay any estimated tax, this section shall not apply to such person with respect to such failure if there is no addition to tax under section 6654 or 6655 with respect to such failure. In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting '5 years' for '1 year'.

L.Ed.2d 335 (1983). The government must prove two elements beyond a reasonable doubt to support a section 7203 conviction: (1) failure to pay taxes when due; and (2) willfulness. *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010.

Williams argues that the government presented insufficient evidence to prove a tax deficiency. He argues that the government based its case on a theory that TFI paid him constructive dividends. That theory, Williams argues, requires the government to prove TFI's "earnings and profits." [3] Williams maintains that the government failed to present any earnings and profits evidence.

The government argues that sufficient evidence supported the jury's finding of a tax deficiency. The government argues that, in criminal tax cases, it is not necessary to characterize unreported income as "constructive dividends" or otherwise.

When reviewing a sufficiency of the evidence challenge to a denial of a motion for judgment of acquittal, we must view the evidence in a light most favorable to the government and determine whether a reasonable jury could find that the evidence established guilt beyond a reasonable doubt. *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986) (citing *Glasser v. United States*, 315 U.S. 60, 62, 62 S.Ct. 457, 461, 86 L.Ed. 680 (1942)); *United States v. Gonzalez*, 617 F.2d 104, 106 (5th Cir.), *cert. denied*, 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980).

In deciding whether the government was required to prove earnings and profits to demonstrate Williams's tax deficiency, we are without the benefit of binding precedent. Williams urges us to accept the reasoning of a recent civil case, *Truesdell v. Commissioner*, 89 T.C. 1280 (1987). The government urges us to adopt the rule in the criminal case *Davis v. United States*, 226 F.2d 331 (6th Cir.1955), *cert. denied*, 350 U.S. 965, 76 S.Ct. 432, 100 L.Ed. 838 (1956). For the reasons discussed below, we adopt the *Davis* rule.

In *Davis*, a jury convicted a taxpayer of diverting corporate funds in violation of 26 U.S.C.A. § 145(b), a precursor of section 7201. The taxpayer appealed contending that the government failed to demonstrate sufficient corporate surplus to cover a dividend distribution. *Davis*, 226 F.2d at 334. The court rejected this contention and affirmed the conviction.

> Appellant makes much of the fact that the government has not fixed a label of some kind on the funds that he took from his corporation. It is not necessary to describe them as additional salary, illicit bonuses, or commissions, or anything more than wrongful diversions, since, as above mentioned, substance controls over form and taxation is concerned with the actual command over the property taxed.
>
> . . . .
>
> [I]f a man has a business of a lucrative nature and is constantly receiving money and depositing it to his own account and using it for his own purposes, this is proof that he has income, and if the amount exceeds exemptions and deductions, that ... income is taxable.

*Davis*, 226 F.2d at 335–36. *Accord Weir v. Commissioner*, 283 F.2d 675, 684 (6th Cir. 1960). Thus, under the *Davis* rule, the government did not need to characterize the diverted funds as constructive dividends, and did not need to prove TFI's earnings and profits, to prove Williams's tax deficiency.

The Tax Court recently refused to apply *Davis* in a civil case. *Truesdell*, 89 T.C. 1280.[4] The *Truesdell* court held that the

---

**3.** Title 26 U.S.C.A. § 316(a) (West 1988) defines "dividends":

> (a) General Rule.—
> For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—
> (1) out of its earnings and profits accumulated after February 28, 1913, or

> (2) out of its earnings and profits of the taxable year ... without regard to the amount of the earnings and profits at the time the distribution was made.

**4.** *Truesdell* does not bind us. *See Gordon v. United States*, 757 F.2d 1157, 1161 (11th Cir. 1985). The *Truesdell* court was bound only by

government could not support asserted tax deficiencies in a fund diversion case because it failed to demonstrate corporate earnings and profits necessary to cover a constructive dividend. The court noted that no Ninth Circuit civil case governed this issue; but the court discussed *United States v. Miller*, 545 F.2d 1204 (9th Cir. 1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977), a criminal case with similar facts. *Miller* bolsters our decision to adopt the *Davis* rule by explaining why civil rules should not automatically apply to criminal cases.

In *Miller*, the court affirmed a conviction in a fund diversion case, upholding a finding that diverted funds constituted salary to the taxpayer. Noting that *"Davis* has been generally followed in the review of *criminal* tax proceedings by the circuit courts,"* the court rejected an argument that it should automatically apply civil rules to criminal cases.

> In civil tax cases the purpose of tax collection and the key issue is the establishment of the amount of tax owed by the taxpayer. In a criminal tax proceeding the concern is not over the type or the specific amount of the tax which the defendant has evaded, but whether he has willfully attempted to evade the payment of assessment of a tax.
>
> . . . .
>
> The difficulty in *automatically* applying the constructive dividend rules to this case is that it completely ignores one essential element of the crime charged: the willful intent to evade taxes, and concentrates solely on the issue of the nature of the funds diverted. The latter aspect is not the important element. Where the taxpayer has sought to conceal income by filing a false return, he has violated the tax evasion statutes. It does not matter that that amount could have been somehow made non-taxable if the taxpayer had proceeded on a different course.

*Miller*, 545 F.2d at 1213–14 (emphasis in original). *See United States v. Thetford*, 676 F.2d 170, 175 (5th Cir.1982), *cert. de-*

*nied*, 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed. 2d 996 (1983) (withholding, diverting, or skimming part of corporation's cash receipts renders shareholder criminally liable). *Cf. Bernstein v. United States*, 234 F.2d 475, 482 (5th Cir.), *cert. denied*, 352 U.S. 915, 77 S.Ct. 213, 1 L.Ed.2d 122 (1956) (government bound to prove earnings and profits because bill of particulars alleged payments to be dividends; court distinguishes *Davis* ).

The *Miller* language distinguishing criminal from civil tax cases comports with reasoning found in Eleventh Circuit criminal tax cases. For example, in *United States v. Cruz*, 698 F.2d 1148, we upheld a section 7201 conviction of a Dominican Republic citizen who claimed that accrued Dominican Republic taxes entitled him to a United States tax credit. We refused to accept Cruz's arguments, labeling them "technicalities which would create a haven for federal tax evasion." *Cruz*, 698 F.2d at 1151. The court stated:

> [U]nder Cruz's interpretation, a taxpayer in his position could wait and pay no tax ... until the United States authorities became aware of an irregularity in his tax return. Once discovered, he could either pay or immediately admit the foreign tax and claim the retroactive United States tax credit[.] ... In short, the taxpayer is able to gamble that neither government will become aware of his tax liability.

*Cruz*, 698 F.2d at 1151–52. *See United States v. Santarelli*, 778 F.2d 609, 617 (11th Cir.1985) (upholding 26 U.S.C.A. § 7206 conviction and citing *Miller* with approval).

■ Like the *Cruz* court, we refuse to condone a taxpayer wait-and-see "gamble." Williams diverted funds from his wholly-owned corporation and failed to account for the diversion on his tax returns. The jury convicted him for that failure, finding a tax deficiency and finding his actions willful. Viewing the evidence in a light most favorable to the government, we find that the evidence supports the convictions. We adopt the *Davis* rule and hold that the

Ninth Circuit law because the case was appeal-

able to that circuit. *Truesdell*, 89 T.C. at 1299.

government need not characterize diverted income in criminal tax cases. Consequently, the government was not required to characterize Williams's income as constructive dividends, and not required to prove TFI's earnings and profits.[5]

### B. Jury Instructions

Williams proposed two charges instructing the jury that, to convict, it needed to find that he received constructive dividends from TFI and that TFI had sufficient earnings and profits to support the dividends.[6] The district court refused to give the instructions. Williams contends that the district court erred.

■ A trial court possesses broad discretion in formulating jury charges. *United States v. Lopez*, 758 F.2d at 1521. Failure to give proposed instructions constitutes reversible error only if the proposed instruction: "(1) was correct, (2) was not substantially covered by others delivered, and (3) concerned a point in the trial so important that the failure to give the requested instruction seriously impaired the defendant's ability to defend himself." *United States v. Sans*, 731 F.2d 1521, 1529–30 (11th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).

The district court did not err in refusing to give Williams's proposed jury charges. Williams's proposed charges were not "correct." The government did not need to prove that Williams received dividends from TFI nor did it need to prove TFI's earnings and profits. The district court's refusal to give Williams's proposed instructions did not impair Williams's defense.

### C. Cross–Examination

At trial, Williams's personal secretary testified as a government witness and questioned the veracity of documents showing the TFI fund diversions to be loans. Williams's attorney proffered evidence designed to impeach the secretary's credibility.[7] The government objected to the proposed testimony on the ground of relevance. The district court sustained the objection.

Williams contends that the district court committed reversible error by limiting his attack on the secretary's credibility. *See* Fed.R.Evid. 607. Williams argues that her testimony was central to the government's case and that, without this credibility attack, her testimony stood unimpeached.

We cannot disturb a trial court's evidentiary ruling absent a clear showing of abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983). *See United States v. Darwin*, 757 F.2d 1193, 1202 (11th Cir.1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986) (extent of cross-examination relating to credibility is within the trial court's sound discretion).

■ Williams fails to demonstrate a connection between the affair, the prior litigation, and this tax evasion case. Merely asserting that a relationship exists is insufficient to demonstrate that a trial judge abused his discretion. *See United States v. McCann*, 465 F.2d 147, 163 (5th Cir. 1972), *cert. denied*, 412 U.S. 927, 93 S.Ct.

---

**5.** The prosecutor argued to the court that the government had the burden of proving a constructive dividend at the close of the government's evidence. Williams was not prejudiced, however, because the district court did not so charge the jury nor did the prosecutor make that argument to the jury. The prosecutor's attempt to assume a heavier burden than required by law confuses the record, but does not prejudice Williams.

**6.** The first charge provided, in part:
I charge you that you must find that the corporation making a distribution with respect to its stock must beyond a reasonable doubt at the close of the taxable year in which

such distribution is made, have had earnings and profits before you may conclude that the distribution is a dividend. If you do not conclude that the corporation had earnings and profits at the conclusion of any taxable year in which it makes a distribution with respect to its stock, you must find the Defendant not guilty for such year.

**7.** He stated that she would be "impeached for her truthfulness by virtue of a love affair with [a man] who was then involved in litigation with Mr. Williams. She bore a child by [the man] and she was married to another man."

2747, 37 L.Ed.2d 154 (1973) (no abuse of discretion where trial judge refused to admit evidence of lawsuits filed against defendants by witness's relations). In addition, our review of the record shows that the secretary's testimony did not stand unquestioned. Williams questioned the secretary regarding her lack of knowledge of TFI's accounting activities and about the fact that she testified against Williams on another occasion. We affirm the district court's decision to exclude Williams's proffered credibility attack against his personal secretary.

### D. Jencks Act and Rule 612 Material

Prior to trial, Williams requested that the government produce materials pursuant to the Jencks Act, 18 U.S.C.A. § 3500 (West 1985).[8] During trial, Williams renewed his request and made a similar request for the production of material pursuant to Fed.R. Evid. 612.[9]

The district court reviewed disputed materials *in camera* and ordered the government to produce a revenue agent's fraud referral report and a portion of a special agent's report. The remaining disputed materials consisted primarily of records of the agents' daily contacts and activities. They also consisted of tax returns from Williams and his corporations, a copy of a previously-produced report written by both agents, personal file notes, and the revenue agent's report on his conclusions of law and intent. The district court sealed these materials for appellate review. We have reviewed the materials and hold that the district court did not commit error by refusing to compel production.

### 1. Jencks Act

We will not disturb a district court's Jencks Act findings unless the determinations are clearly erroneous. *United States v. Medel*, 592 F.2d 1305, 1316–17 (5th Cir. 1979); *United States v. Cruz*, 478 F.2d 408, 413 (5th Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973).

The bulk of the disputed material concerns matters that do not relate to the subject matter of the agents' testimony. 18 U.S.C.A. § 3500(b). For this reason, the district court's decision not to compel production of personal notes, contact sheets, witness lists, summaries of non-testifying witness statements, and the revenue agent's legal conclusions does not constitute error. *See Medel*, 592 F.2d at 1316. The government produced other material, such as the agents' joint report and the tax returns, and the court admitted these doc-

---

**8.** The Jencks Act provides, in pertinent part:

    (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

    . . . .

    (e) The term 'statement,' as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

        (1) a written statement made by said witness and signed or otherwise adopted or approved by him;

        (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement. . . .

**9.** Federal Rule of Evidence 612 provides:

Except as otherwise provided in criminal proceedings by section 3500 of Title 18, United States Code, if a witness uses a writing to refresh memory for the purpose of testifying, either—

    (1) while testifying, or

    (2) before testifying, if the court in its discretion determines it is necessary in the interest of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing *in camera,* excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.

uments into evidence. The decision not to compel production of these materials, therefore, did not constitute error. *See Medel*, 592 F.2d at 1316–17. In addition, the district court did not err by failing to compel production of third-party materials sent to the agents. These materials are not "statements" within the meaning of the Jencks Act. 18 U.S.C.A. § 3500(e).

Williams argues that because the agents "prepared and reviewed" the disputed materials, and because the agents' testimony related to their investigations, the government must produce the agents' files in their entirety. Based on *Medel*, we reject this reading of the Jencks Act and conclude that the district court did not clearly err in refusing to compel production of the above-mentioned materials.

### 2. Federal Rule of Evidence 612

Rule 612's language grants a trial court discretion in ordering the production of documents. *See Cosden Oil & Chemical Co. v. Karl O. Helm Akteingesellschaft*, 736 F.2d 1064, 1076–77 (5th Cir.1984).

██ Of the material reviewed by the special agent during trial preparation, the government only failed to produce non-testifying witness statements. As discussed above, the Jencks Act does not require the government to produce such documents. *See Medel*, 592 F.2d at 1316 & n. 12. Because rule 612 is limited by the Jencks Act, the district court did not abuse its discretion by concluding that rule 612 did not compel production of the same documents.

██ Of the material reviewed by the revenue agent during trial preparation, the government only failed to produce two items: the agent's "sign-out sheet" and the agent's contact sheet. As discussed above, the government was not required to produce the contact sheet under the Jencks Act because the contact sheet's contents were unrelated to the subject matter of the agent's testimony. 18 U.S.C.A. § 3500(b); *Medel*, 592 F.2d at 1316–17. Again, because the Jencks Act does not compel the production of these documents, the district court did not abuse its discretion by making the same ruling under rule 612. With

respect to the agent's "sign-out sheet," Williams fails to demonstrate that the district court abused its discretion by failing to compel production. Williams merely asserts that the district court's denial of all disputed materials was "highly prejudicial."

We reject Williams's argument that *Needelman v. United States*, 261 F.2d 802 (5th Cir.1958), *cert. dismissed*, 362 U.S. 600, 80 S.Ct. 960, 4 L.Ed.2d 980 (1960) allows us to conclude that the district court abused its discretion by refusing to compel production of material outside the scope of the Jencks Act. The *Needelman* court merely held that the then-recent *Jencks* case, *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and the newly-passed Jencks Act did not remove a trial court's discretion to compel the production of materials used to refresh a witness's recollection. *Needelman*, 261 F.2d at 806. In this situation, Williams fails to convince us that the district court abused its discretion by refusing to compel the production of disputed materials under rule 612.

### E. Exclusion of Testimony

At trial, Williams sought to introduce testimony justifying his uncooperativeness toward the Internal Revenue Service ("IRS"). Williams sought to testify that an IRS agent lied to him when explaining why the IRS audited TFI. The government objected on hearsay and relevance grounds. The district court sustained the objection. Williams contends that the district court's decision constituted an abuse of discretion.

██ Williams's contention is meritless. Shortly after the district court's ruling, Williams testified as he desired without objection.

> Mr. Ira Brown, the group supervisor of the IRS, lied to me.
>
> He told me that the audit of TFI commenced as the result of an audit of a firm in the northeast by the name of UOP that had paid very substantial cancellation fees to subcontractors. . . .

The district court's decision, therefore, could not have prejudiced Williams.

## VI. CONCLUSION

We hold that: (1) sufficient evidence supports the convictions; (2) the district court did not commit reversible error by refusing Williams's suggested earnings and profits jury charges; (3) the district court did not abuse its discretion by denying Williams an opportunity to cross-examine a government witness; (4) the district court did not err in refusing to compel production of Jencks Act documents or to compel the production of documents pursuant to Fed.R.Evid. 612; and (5) the district court did not abuse its discretion by excluding a portion of Williams's testimony.

The convictions and judgments are affirmed.

AFFIRMED.