UNITED STATES of America,
Plaintiff–Appellee,

v.

Jay BLAKEY, aka: Jerry Blakey, Jay Bleckey, Defendant–Appellant.

No. 91–8111.

United States Court of Appeals,
Eleventh Circuit.

May 20, 1992.

Gregory S. Smith, Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

Martin J. Weinstein, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This case involves a check which was originally a $5.00 check but had been made to appear to be a cashier's check for $35,000 when it was deposited into an account at Citizens and Southern National Bank (C & S).

We reverse defendant Jay Blakey's two count conviction for conspiracy to defraud the bank and to possess a counterfeited and forged security under 18 U.S.C. § 371, and for aiding and abetting the possession of a counterfeited security under 18 U.S.C. § 513(a), because the trial court admitted into evidence a hearsay statement of a co-defendant which was not made in furtherance of the conspiracy.

Inasmuch as the Government is entitled to retry defendant, it is necessary to reflect that we would affirm the district court against defendant's other contentions on this appeal:

*First*, that the check was not counterfeited but was in fact forged, so he was entitled to a judgment of acquittal because he was not charged under the forged security statute.

*Second*, that the court made two evidentiary errors: (a) denial of a mistrial when a witness mentioned that a co-defendant had filed an appeal, and (b) admission of "flight" evidence testimony concerning an

event that occurred three years after the check was deposited.

*Third,* that the court improperly denied a requested instruction on the conspiracy charge.

*Fourth,* that the court failed to explain why the sentence was above the sentencing guidelines range.

On March 25, 1987, the falsified check, purportedly from Ohio State Federal Savings and Loan, made payable to the American Refinance Group (ARG) was deposited into ARG's checking account at C & S. ARG was owned solely by Ronald Westmoreland and was in the business of financing the purchase and sale of low income rehabilitated residential properties. The deposit of the cashier's check was made by Ronald Townsend, the Vice President of ARG and the sole signatory on the ARG account.

Testimony was presented at trial to show that the forged check was given by defendant Jay Blakey to Westmoreland and Townsend as payment for a $15,000 debt owed by Blakey to Westmoreland. Townsend was to deposit the check into the ARG account and return the $20,000 difference to Blakey. Over the next few days, several checks totaling $18,000 were written at Westmoreland's direction and signed by Townsend. Although none of these checks were written to Blakey, they were credited against the $20,000 owed to Blakey. Additional checks were written against Westmoreland's $15,000 share of the deposit.

On March 31, 1987, C & S learned that the cashier's check was being returned. C & S immediately debited the $35,000 from the ARG account, which at that point had a positive balance of $6,697.07, yielding an overdraft of $28,302.93.

Blakey objected to the admission into evidence of a certain statement of co-defendant Westmoreland, reflected in the statements of Bobby Smith, the Assistant Vice President of Fraud Investigation at C & S. Smith testified that Westmoreland told him that Westmoreland received the $35,000 check from a Jay Blakey.[1] Westmoreland was not called to testify.

The Federal Rules of Evidence provide that a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). Since there was sufficient evidence to establish the existence of a conspiracy and that defendant and Westmoreland were members of it, the question is whether the district court correctly ruled that the hearsay statement was in furtherance of the conspiracy.

■ Statements which serve a necessary part of a conspiracy by concealing it or impeding an investigation are admissible as statements made during and in furtherance of the conspiracy. *United States v. Griggs,* 735 F.2d 1318, 1325 (11th Cir.1984). Statements which simply implicate one coconspirator in an attempt to shift the blame from another, however, cannot be characterized as having been made to advance any objective of the conspiracy. On the contrary, statements that implicate a coconspirator, like statements that "spill the beans" concerning the conspiracy, are not admissible under Rule 801(d)(2)(E). *See United States v. Posner,* 764 F.2d 1535 (11th Cir.1985).

■ The statement made by Westmoreland implicated a Jay Blakey, the name of this defendant. The statement pointing the

1. A. I showed him the check; I asked him how he came into possession of the check. He stated that he had received a call from *Jay Blakey* of Las Vegas about buying some land, that Mr. Blakey came to Atlanta and gave this check to Mr. Moreland.
Q. Mr. Westmoreland?
A. Yes, sir, Mr. Westmoreland. Mr. Westmoreland did not like the looks of the check, so he had a friend to check it out for him by the name of Mark who owned a check cash-

ing place. Evidently, Mark was taking too much time in checking out the check, so Mr. Blakey asked Mr. Westmoreland for the check back. Mr. Westmoreland then got the check back from Mark. He, in turn, Mr. Westmoreland, gave the check back to Jay Blakey, and, supposedly, Jay Blakey then, in turn, gave the check to Mr. Ronald Townsend, not knowing that Mr. Westmoreland had given the check back to Mr. Blakey.
R4–136–37 (emphasis added).

finger to this defendant as the source of the falsified check could hardly be considered to have advanced any object of the conspiracy. It is precisely the type of hearsay statement which cannot be admitted against a defendant. In fact, at the time the statement was made, the coconspirator had every incentive to point the finger at the defendant in order to shift the focus of the investigation away from himself.

The Government asserts that Westmoreland's statement is admissible under Rule 801(d)(2)(E) because it is an attempt not to implicate a coconspirator, but to mislead the investigation. The argument is based on the testimony of Smith that he subsequently received an incorrect Las Vegas phone number for Blakey from Townsend, the signatory on the account into which the check was deposited. Although a Jay Blakey resided at that number, it was not the Blakey who is the accused before us.[2] The Government argues that Westmoreland's statement is admissible because when combined with Townsend's statement, it shows an attempt to mislead.

There is no evidence in the record, however, that Westmoreland knew any Jay Blakey other than the defendant. Nor is there any evidence that Townsend was something other than mistaken as to Blakey's telephone number. That there was another Jay Blakey in Las Vegas is not shown to have been known by Westmoreland. Westmoreland's statement cannot be rendered admissible as part of a combined effort to mislead without a stronger evidentiary

showing that the statement was made to mislead the investigation and to cover up the conspiracy. This testimony violated defendant's constitutional right to be confronted with the witnesses against him. His conviction must be reversed.

It is necessary that we rule on Blakey's other contentions in the event of a new trial.

### Counterfeit or Forged

■ The check at issue in this case originated as a $5.00 check drawn in 1983 on the Ohio State Federal Savings and Loan Association. By the time the check was deposited at C & S, it had been transformed into a cashier's check for $35,000 with a falsified 1987 date and authorizing signature.

Blakey was charged with aiding and abetting the possession of a counterfeited security in violation of 18 U.S.C. § 513. Blakey asserts that the check was not counterfeit as defined by § 513, but was forged and therefore he was convicted of a crime for which he was not charged. He contends this instrument was "forged" because it was an alteration of an originally valid check, and therefore, not falsely made in its entirety and so not covered by the counterfeit statute.

18 U.S.C. § 513 defines counterfeit as "a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." 18 U.S.C. § 513(c)(1). Forged instruments also are

---

**2.** Q. Now, Mr. Smith, at some point in time did Mr. Westmoreland cease to continue to be cooperative?
A. At 9:45 a.m., when Mr. Townsend showed up, I advised him of his constitutional rights, both people of their constitutional rights. At this time, Mr. Westmoreland decided to leave the interview.
Q. Now, did Mr. Townsend continue to be cooperative?
A. He did.
Q. Did there come a time at which you learned a phone number to a Mr. Blakey in Las Vegas, Nevada?
A. I did. Mr. Townsend provided me with a phone number for Mr. Jay Blakey in Las Vegas.
Q. Do you know how Mr. Townsend had gotten that phone number?

A. If I remember correctly, he told me that he received it from Mr. Westmoreland.
Q. Did you, in fact, call the telephone number in Las Vegas, Nevada?
A. I did.
Q. What, if anything, did you discover, sir?
A. I spoke to Mrs. Blakey, and her husband was Mr. Jay Blakey, and I questioned her if they'd been to Atlanta to purchase any kind of real estate recently, or this year, and she stated no, they had not, that they only passed through Atlanta some eight months prior to this date going to Albany, Georgia. And I also asked her if her husband was a black male, and she stated no, he was a white male.
R4–137–38.

covered by this statute, and are defined in § 513(c)(2) as documents that purport to be genuine but are not because they have been "falsely altered, completed, signed, or endorsed, or contain[ ] a false addition thereto or assertion therein...."

The meaning of "falsely made" within the context of 18 U.S.C. § 2314 (relating to interstate transportation of falsely made securities) has been settled by the Supreme Court in *Moskal v. United States*, —— U.S. ——, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). The petitioner in *Moskal* was convicted for receiving falsely made securities in violation of § 2314. He challenged his conviction, asserting that although the motor vehicle titles he received contained false mileage figures, they were genuinely issued titles that merely incorporated false information. The *Moskal* Court held that genuine documents which contain false or incorrect information are "falsely made" for purposes of § 2314.

The *Moskal* Court did not specifically address the distinction between forged and counterfeit securities. The holding of that case is relevant nonetheless, because 18 U.S.C. § 513(c)(1) includes the term "falsely made" within the definition of counterfeit. Unlike § 2314, however, § 513 further restricts counterfeit to a document that is falsely made "in its entirety". In spite of this restriction, the altered document here falls within the statute because all of the essential information was falsified. In light of the *Moskal* holding and the extensive alterations which were made to the check, we conclude that the check was counterfeit as defined by § 513(c)(1). The defendant's attempt to distinguish between documents which were originally genuine and those which were not is inconsistent with the general purpose of the statute.

### Mention of Co–Defendant's Appeal

The district court denied a motion for mistrial based on testimony regarding the conviction of coconspirator Ron Westmoreland. One of the Government's witnesses stated during his testimony that "Ron was on an appeal on this case." The district court had granted defendant's motion in limine for exclusion of such evidence. Blakey argues that he is entitled to a mistrial because of the alleged prejudicial impact of placing evidence of Westmoreland's conviction before the jury.

The decision to grant a mistrial lies within the sound discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury. *United States v. Satterfield*, 743 F.2d 827, 848 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). The record supports the district court's conclusion that the effect on the jury of this witness' comment was harmless. The comment did not specifically state that Westmoreland had been convicted, nor was it clear that he was discussing an appeal on charges related to this conspiracy.

The judge offered to instruct the jury to disregard the statement, but the defense counsel refused. The district court did not abuse its discretion in refusing to grant a mistrial.

### Flight Evidence

Blakey challenges the admission of evidence of his flight from FBI agents who tried to apprehend him in Atlanta in May 1990. FBI Special Agent Cagle testified that, when he and other agents surrounded a car driven by Blakey, Blakey fled. He led the agents on a high speed chase, and eventually lost them in the traffic. The flight occurred three years after the events surrounding this crime for which he was charged, and at a time when Blakey knew that there was an outstanding warrant for his arrest in Michigan on an unrelated offense.

Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt. *United States v. De Perias*, 805 F.2d 1447 (11th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987). The probative value of such evidence obviously is diminished if the defendant has committed several unrelated crimes or if there has been a significant

time delay between the commission of the crime or the point at which the accused has become aware that he is the subject of a criminal investigation, to the time of flight. *United States v. Myers*, 550 F.2d 1036, 1050–51 (5th Cir.1977), *appeal following remand*, 572 F.2d 506 (5th Cir.1978), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978). The ultimate decision on admissibility of flight evidence rests with the trial judge, whose exercise of discretion will not be overturned absent a showing of clear abuse. *United States v. Borders*, 693 F.2d 1318, 1325–26 (11th Cir. 1982), *cert. denied*, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983).

■ In this case, there was sufficient circumstantial evidence to support the district court's conclusion that Blakey's flight demonstrated consciousness of guilt concerning the crime charged. The flight occurred when Blakey was in Atlanta, the location of the crime. Blakey was with coconspirator Westmoreland at the time of the flight. Blakey knew that Westmoreland was being prosecuted for his role in the crime and that he was appealing his conviction. In addition, there was some evidence that Blakey knew that an indictment had been issued against him or at least that he was under investigation for his participation in the check scheme.

In light of the facts of this case, *United States v. Ramon–Perez*, 703 F.2d 1231, 1233 (11th Cir.1983), *cert. denied*, 464 U.S. 841, 104 S.Ct. 136, 78 L.Ed.2d 130 (1983), the evidence connecting the circumstances of the flight with the defendant's consciousness of guilt was sufficient to support the district court's discretion in admitting the flight evidence.

### Requested Instructions

Blakey requested the district court to instruct the jury that mere knowledge of a conspiracy's existence does not render one a coconspirator, and that evidence of knowledge of the conspiracy must be clear and unequivocal. The charge given to the jury followed the pattern instructions on general criminal conspiracy. Committee on Pattern Jury Instructions, Eleventh Circuit, Pattern Jury Instructions (Criminal Cases) Offense Instructions 4.1 (1985). Included in these instructions was a warning that the defendant is guilty of conspiracy only if the jury finds that the defendant willfully became a member of the conspiracy, and that the defendant willfully and knowingly participated in the scheme while understanding the unlawful nature of the plan. The jury was instructed that a person who has no knowledge of the conspiracy does not become a conspirator when he happens to act in a way which advances some purpose of the conspiracy.

■ A trial judge is not obligated to give a requested instruction that has been adequately covered by other instructions. *United States v. Bailey*, 830 F.2d 156 (11th Cir.1987). The district court did not abuse its discretion in refusing to give the jury instructions requested by the defendant. *See United States v. Williams*, 875 F.2d 846, 852 (11th Cir.1989).

### Sentence

Blakey asserts that the district court erred in failing to offer an explanation for the sentence it imposed. The district court sentenced Blakey to seven years imprisonment. This sentence is well within the statutory maximum of fifteen years allowed for Blakey's two count felony conviction. Because the Sentencing Guidelines do not apply to this case, the crime having been committed prior to November 1, 1987, the district court is not required to explain a sentence that is within the maximum provided by law. United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A; 18 U.S.C. § 3533(c). The issue of whether the district court's pre-guidelines sentence was illegally imposed is properly addressed by a motion to the district court under Federal Rule of Criminal Procedure 35(a). No such motion was made by the defendant. Blakey's arguments as to sentence on this appeal must fail.

### Conclusion

Although the trial court is due to be affirmed on all of its rulings except the admission of the co-conspirator's state-

ment, Blakey's conviction must be reversed on that ruling because he was deprived of the right to be confronted by a witness against him.

REVERSED.

BIRCH, Circuit Judge, concurring in part and dissenting in part:

I concur with all of the majority's opinion in this case with the exception of the treatment of the flight evidence. Based upon the evidence existing in this case and the relative weight of that evidence, I conclude that it was reversible error to admit the evidence of flight.