[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12272
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 19, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00081-ODE-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN RAMON WINFREY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 19, 2010)

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

Juan Ramon Winfrey ("Winfrey") appeals his convictions and sentences for

carjacking, in violation of 18 U.S.C. § 2119 (count one), brandishing a firearm

during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (count two), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (count three). After review, we affirm.

## I. BACKGROUND

At approximately 9:50 p.m on April 4, 2008, the victim Pernel Rivers was filling his silver Chevrolet Monte Carlo at a gas station when he was approached by a man with a gun and robbed. The gunman and an accomplice then drove away in Rivers's car. Rivers immediately reported the incident to the police.

Approximately ten minutes later, Officer Peter Cunningham arrived at the gas station. By this time, other officers had stopped a car matching the description of Rivers's Monte Carlo at a nearby intersection. Officer Cunningham drove Rivers to that location so that a "show up" could be conducted. While sitting in Officer Cunningham's patrol car, Rivers identified Defendant Winfrey as the gunman who took his money and car.

Prior to trial, Winfrey moved to suppress Rivers's show up identification as well as any in-court identification by Rivers. Winfrey argued that the show-up procedures were unduly suggestive and the admission of the identifications would violate his Fifth Amendment due process rights. After a suppression hearing, a magistrate judge entered a report ("R&R") recommending that the motion be

2

denied. Over Winfrey's objection, the district court adopted the R&R and denied Winfrey's motion to suppress.

At trial, without objection, Rivers and Officer Cunningham testified about Rivers's show-up identification of Winfrey. In addition, Rivers identified Winfrey in court as the gunman.

Detective Nathan Deaton and Officer Gregory Vickers, who were involved in arresting Winfrey, also testified. Deaton, in his unmarked car, followed a silver Monte Carlo matching the description of the stolen vehicle for about ten minutes, until 10:07 p.m. When marked patrol cars arrived, they surrounded the Monte Carlo as it pulled up to a stop light. Winfrey then exited the driver's side door and ran toward Deaton and Officer Vickers. Deaton and Vickers pulled Winfrey to the ground and arrested him. A second man, later identified as Umar Yamini, also exited the Monte Carlo, tried to run and was detained. At trial, Yamini admitted that he and Winfrey had carjacked Rivers. According to Yamini, Winfrey wielded the gun and drove the Monte Carlo.

Defendant Winfrey testified that he was not involved in the carjacking. According to Winfrey, he was selling marijuana outside a nearby Home Depot when a third man drove up in the Monte Carlo with Yamini riding in the passenger seat. The third man got out of the Monte Carlo and left. Winfrey got into the

3

driver's seat to drive Yamini home. Shortly after Winfrey took the wheel of the Monte Carlo, police stopped the car. Winfrey contended that he thought he was being pulled over for a traffic violation and denied trying to run after he got out of the Monte Carlo.

During jury instructions, over Winfrey's objection, the district court gave this charge about the inferences that may be drawn from a defendant's flight:

> Now the government has argued that the defendant's flight from the scene of the crime and from the police officers shows a consciousness of guilt on his part, and when I refer to flight from the scene of the crime, I'm referring to the testimony about the–after the vehicle left the scene of the crime but before the vehicle was stopped.
> You are instructed that flight by a person immediately after a crime has been committed or after that person has been accused of a crime that has been committed is not of course sufficient in itself to establish the guilt of that person, but flight under those circumstances is a fact which, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of the defendant.

The jury convicted Winfrey on all three counts.

Prior to sentencing, Winfrey filed a motion for concurrent sentences and objected to receiving a consecutive sentence for count two, his § 924(c) firearm offense. Winfrey acknowledged, however, that the district court was bound by Eleventh Circuit precedent that contradicted his argument. The district court imposed concurrent 240-month terms of imprisonment on counts one (carjacking)

and three (convicted felon in possession of a firearm) and a consecutive 84-month term of imprisonment on count two (brandishing a firearm). Winfrey filed this appeal.

## II. DISCUSSION

### A. Eye-witness Identification

Winfrey argues that the district court erred in admitting: (1) Rivers's show-up identification because it was the product of unduly suggestive procedures; and (2) Rivers's in-court identification because it was tainted by the show-up identification.

We use a two-part test to determine whether an out-of-court identification was properly admitted. United States v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001). First, we consider whether the original identification procedure was unduly suggestive. If we conclude that it was, we then consider whether, under the totality of the circumstances, "the identification was nonetheless reliable." Id. At the second step, we consider several factors to determine the identification's reliability, including: (1) the opportunity the witness had to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime

5

and the confrontation.  Id.; see also Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972).

While show ups, i.e., "showing suspects singly to persons for the purposes of identification," are considered inherently suggestive, see Stovall v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967), "admission of evidence of a showup without more does not violate due process." Manson v. Brathwaite, 432 U.S. 98, 106, 97 S. Ct. 2243, 2249 (1977).  This is because "immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons." Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987).  Accordingly, show ups are unnecessarily suggestive only when "police aggravate the suggestiveness of the confrontation." Id.

An in-court identification based on an independent source may be admissible despite a suggestive out-of-court identification procedure. See Marsden v. Moore, 847 F.2d 1536, 1546 (11th Cir. 1988).  In determining whether Rivers's in-court identification had a reliable, independent basis, we consider the same factors that we consider when determining whether an out-of-court identification is reliable. Id.

Here, we find no error, plain or otherwise, in the district court's admission

of Rivers's out-of-court and in-court identifications of Winfrey.[1]  The show-up

procedure used in this case was not unduly suggestive.  After Officer Cunningham

drove Rivers to the location where they had recovered his car, he asked Rivers to

identify anyone that may have been involved in the carjacking.  While Rivers

remained in Officer Cunningham's patrol car, officers escorted Winfrey out of

another patrol car so Rivers could see him.  At that point, Rivers identified

Winfrey as the gunman.  Rivers testified that he was "a hundred percent sure"

Winfrey was the gunman when he saw Winfrey.  There is no evidence in the

record that the officers did anything to aggravate the suggestiveness of this

encounter.

Moreover, Rivers's identifications of Winfrey were highly reliable.  Rivers

had ample opportunity to view Winfrey at the gas station.  Rivers testified that he

first noticed Winfrey standing across the street while Rivers was pumping gas and

_____

[1]Although Winfrey filed a motion to suppress Rivers's identifications, he did not object to their admission during the trial.  Thus, our review is for plain error.  See United States v. Khoury, 901 F.2d 948, 966 (11th Cir. 1990) ("A defendant must object at trial to preserve an objection on appeal; the overruling of a motion in limine does not suffice."); see also Fed. R. Crim. P. 52(b). To prevail under the plain error standard, Winfrey must show that the district court committed error that was plain and that affected substantial rights.  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).  We may then correct the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings.  Id.

In reviewing a district court's ruling on a motion to suppress, we construe the facts in the light most favorable to the government, as the prevailing party.  United States v. Newsome, 475 F.3d 1221, 1223-24 (11th Cir. 2007).  We are not limited to the evidence presented at the suppression hearing, but may consider the entire record, including trial testimony.  Id. at 1224.

then stood face-to-face with Winfrey and spoke with him during the robbery.

Rivers was attentive during the crime and recalled specific details of the carjacking, such as the kind of handgun Winfrey used (a small Derringer with two barrels side by side and about four inches in length), Winfrey's demeanor and statements he made during the carjacking and the direction in which Winfrey drove away afterward. Only about twenty minutes elapsed between the carjacking and River's identification of Winfrey, so River's recollection was fresh. And, at the show up and later in court, Rivers was absolutely certain Winfrey was the gunman who stole his car.

Rivers's general description of the two carjackers as two black males was consistent with what officers found when they located Rivers's Monte Carlo. Under the circumstances, Rivers's lack of detail does not suggest unreliability. Because the police located Rivers's car at the same time that Officer Cunningham arrived at the gas station, Rivers had little opportunity to give a detailed description of the carjackers before Officer Cunningham escorted him to the scene.

Winfrey did not show that Rivers's out-of-court identification was impermissibly suggestive or unreliable or that it tainted River's in-court identification. Therefore, the admission of this testimony did not violate

8

Winfrey's Fifth Amendment due process rights.

## B.    Flight Jury Instruction

District courts have broad discretion in crafting jury instructions as long as the charge accurately reflects the law and the facts. United States v. Kennard, 472 F.3d 851, 854 (11th Cir. 2006). "Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." United States v. Blakey, 960 F.2d 996, 1000 (11th Cir. 1992). This Court has consistently upheld jury instructions on the use of flight evidence. See, e.g., United States v. Borders, 693 F.2d 1318, 1327-28 (11th Cir. 1982).[2]

Winfrey does not argue that the flight jury instruction misstated the law. Instead, Winfrey contends that the instruction was improper because there was no evidence of a car chase in the Monte Carlo. While Winfrey did not attempt to evade police in the Monte Carlo (and was probably unaware he was being followed by Detective Deaton's unmarked car), once the Monte Carlo was surrounded by patrol cars, Winfrey jumped from the car and attempted to run on

---

[2]We review de novo whether the district court's jury instruction misstated the law or misled the jury to the defendant's prejudice. United States v. Deleveaux, 205 F.3d 1292, 1296 (11th Cir. 2000). In so doing, "we look at the entire jury charge in the context of the trial record." Id. Even if a jury charge is erroneous, we will reverse a conviction and remand for a new trial only "when a reasonable likelihood exists that the jury applied the instruction in an improper manner." United States v. Chirinos, 112 F.3d 1089, 1096 (11th Cir. 1997) (quotation marks omitted).

9

foot. Detective Deaton and Officer Vickers both testified that Winfrey exited the Monte Carlo and ran, but was immediately apprehended. This evidence was sufficient to warrant the jury instruction on flight.

## C.     Consecutive Sentences

Under 18 U.S.C. § 924(c), a defendant who brandishes a firearm during and in relation to a crime of violence is subject to a mandatory minimum seven-year imprisonment term "in addition to the punishment provided for" the crime of violence, "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." 18 U.S.C. § 924(c)(1)(A). Furthermore, § 924(c) states that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed." Id. § 924(c)(1)(D)(ii).

Citing case law from other circuits, Winfrey argues that the prefatory "except" clause in § 924(c)(1)(A) prohibits a consecutive sentence where, as in his case, another offense of conviction carries a greater mandatory minimum sentence. Winfrey's argument is foreclosed by our binding precedent. In United States v. Segarra, 582 F.3d 1269, 1272-73 (11th Cir. 2009), petition for cert. filed, (U.S.

10

Jan. 8, 2010) (No. 09-8536), this Court rejected the interpretation of § 924(c)(1)(A) advanced by Winfrey and held that the prefatory "except" clause does not limit consecutive sentences under § 924(c). The district court's imposition of a consecutive eighty-four month sentence under § 924(c) was not error.

**AFFIRMED.**