[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12716
Non-Argument Calendar
_____

D.C. Docket No. 8:96-cr-00064-SDM-TBM-4


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY M. MYERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 25, 2013)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

On March 15, 1996, a Middle District of Florida grand jury returned a

thirteen-count indictment against Larry M. Myers and ten others for multiple

offenses.  Myers was charged in four of the counts:  Count One, conspiring, in violation of 18 U.S.C. § 371, to mail threatening communications, to influence officers and jurors, and to obstruct justice; Count Two, conspiring, in violation of 18 U.S.C. § 372, to prevent, by intimidation and threats, officers of the United States from discharging their duties; Count Four, in violation of 18 U.S.C. § 876, delivering a threatening communication by mail to a Hillsborough, County, Florida judge for purpose of extorting a cessation of judicial actions; Counts Twelve and Thirteen, in violation of 18 U.S.C. § 1503, attempting to obstruct justice in a case pending in the Northern District of California.  Myers became a fugitive and remained at large until he was arrested in Arkansas on August 5, 2011.

Myers stood trial on February 6, 2012, before the District Court in Tampa, Florida.  On May 14, 2012, the court sentenced him to concurrent prison terms of 60 months on Count One, 72 months on Count Two, and 78 months on Counts Twelve and Thirteen.  He now appeals his convictions, raising two issues: (1) whether the District Court abused its discretion in refusing to permit Myers to testify about his theory as to why he, as a "Sovereign Citizen," was not obligated to pay federal income taxes, and (2) whether the court erred in denying his motions for judgment of acquittal.[1]  We find no merit in either issue and therefore affirm.

---

[1]   Myers brief raises a third issue, whether the court erred in denying his motion to suppress evidence.  We do not address the issue because he withdrew his motion to suppress and the court therefore did not rule on it.

2

We review the District Court's rulings on admission of evidence for abuse of discretion. *United States v. DuBose*, 598 F.3d 726, 731 (11th Cir. 2010). Under an abuse-of-discretion standard, we must affirm unless we find that the court has made a clear error of judgment, or has applied the wrong legal standard. *Id.* "A district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992). Under Federal Rule of Evidence 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403.

The District Court did not abuse its discretion in limiting Myers's testimony because the probative value of the testimony was substantially outweighed by its potential to confuse the issues and mislead the jury. *See* Fed. R. Evid. 403. Although Government witnesses testified that Myers had not regularly paid his taxes and that Myers referred to himself as a sovereign, Myers was not charged with tax evasion or any crime that related to citizenship. As such, the proffered testimony regarding his beliefs on taxation and citizenship had little to no bearing on the conspiracy and obstruction charges in this case. Thus, its probative value, if any, was slight. Moreover, the court found that such testimony would confuse the

3

jury because this case was not about Myers's beliefs on taxation and citizenship, but about his actions regarding the conspiracy and obstruction charges.

Furthermore, Myers's proffered testimony was likely to mislead the jury as it did not explain why he was innocent of any of the offenses with which he was charged. Therefore, because the probative value was slight and the possibility of confusing and misleading the jury was great, the court did not make a clear error of judgment in limiting Myers's testimony pursuant to Rule 403. *DuBose*, 598 F.3d at 731.

We review the denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal *de novo*. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir.), *cert. denied*, 132 S. Ct. 826 (2011). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the Government, with all inferences and credibility choices made in the government's favor. *Id.* Moreover, we will affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* The facts do not need to "exclude every reasonable hypothesis of innocence." *United States v. Tampas*, 493 F.3d 1291, 1298 (11th Cir. 2007). Rather, the jury is free to choose among reasonable constructions of the evidence. *United States v. Williams*, 390 F.3d 1319, 1323 (11th Cir. 2004). Further, where, as here, the defendant testifies, the jury is free to disbelieve his testimony and to consider his statements,

4

along with other evidence, as substantive evidence of guilt. *United States v. Ellisor*, 522 F.3d 1255, 1272 (11th Cir. 2008). Moreover, in this case, the evidence Myers's flight to avoid arrest was admissible to demonstrate consciousness of guilt and thus guilt. *See United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992).

Myers absconded from Florida after being indicted in this case in 1996 and remained a fugitive in Arkansas until 2011. As stated above, the jury could consider this evidence as evidence of his guilt. *See Blakey*, 960 F.2d at 1000. Also, Myers testified on his own behalf, was provided the opportunity to explain all of his actions, and made several statements denying his guilt. He specifically denied knowingly and willfully conspiring to threaten government officials and knowingly and willfully conspiring to obstruct justice. The jury could consider his denial of guilt in deliberating over the elements of the charged offenses. *See Ellisor*, 522 F.3d at 1272. Moreover, while Myers argues that the evidence was also consistent with a theory of innocence, we have held that, to uphold a conviction, the facts do not need to exclude every reasonable hypothesis of innocence, and the jury is free to choose among reasonable constructions of the evidence. *See Tampas*, 493 F.3d at 1298. With these principles in hand, we turn to the sufficiency of the evidence to convict Myers of the charged offenses.

Count One. Conspiracy to convey threatening communications by mail and using threats or intimidation to obstruct justice.

To sustain a conviction for conspiring, in violation of 18 U.S.C. § 371, the Government must prove (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The existence and participation in a conspiracy may be proven by circumstantial evidence and inferred from concert of action. *United States v. Guerra*, 293 F.3d 1279, 1285 (11th Cir. 2002).

Here, the evidence demonstrated that Myers knowingly participated in a conspiracy to mail threatening communications to public officials with the intent to obstruct justice. As required for his conspiracy conviction, Myers entered into an agreement with others to achieve an unlawful objective. *See Hasson*, 333 F.3d at 1270. Myers testified that he signed letters that were drafted by a codefendant, and the evidence showed that other individuals signed at least one of the documents labeled as an "indictment." Thus, there was evidence that two or more persons participated in the offense. Second, although Myers testified that he did not read most of the letters that he signed, the evidence demonstrates that he knowingly and voluntarily participated in the agreement. He repeatedly acknowledged that he had signed the arrest warrants and other documents bearing his signature. Moreover, he testified that he had edited at least one of the letters that was mailed, thus evidencing that he had read and comprehended the context of at least one of the

6

threatening communications. Finally, there was an overt act in furtherance of the agreement, because the letters were actually mailed and received by public officials. The use of the words "militia" and "treason" in several of the documents indicate that the documents were calculated to intimidate recipients and to obstruct justice. Further, Myers's possession of bomb-making materials, books on how to create explosives from those materials, and possession of numerous weapons is further evidence that Myers intended to carry out potentially violent acts and act on his threatening words. Even though Myers offered legitimate reasons for his possession of the weapons and chemicals, the jury determines credibility and can choose among reasonable constructions of the evidence. *See Gamory*, 635 F.3d at 497; *Williams*, 390 F.3d at 1323.

Count Two. Conspiracy to impede certain officials in discharging the duties of their offices by intimidation and threat.

A charge of conspiracy to prevent by intimidation a judicial officer from discharging his official duties, in violation of 18 U.S.C. § 372, requires the Government to prove that the defendant conspired to prevent, by force, intimidation, or threat, any officer of the United States from discharging his official duties. 18 U.S.C. § 372.

Here, the evidence was sufficient to sustain Myers's charge for conspiracy to prevent by intimidation a judicial officer from discharging his official duties, in

violation of § 372.  Myers's threatening communications were sent to judges, U. S. Marshals, and other public officials in an effort to prevent by intimidation the judicial officers from discharging their official duties.  For instance, Myers sent several documents, in his capacity as a "Militia Volunteer" and "Constitutional Common Law Enforcement Officer," seeking the release of the two defendants during a 1994 tax fraud case.  He also mailed letters to the U.S. Attorney's office, which purported to be arrest warrants for the jurors in that trial.  Further, in a separate incident, he signed letters "indicting" judges and threatening to arrest judges and other public officials in Florida.

Count Four.  Delivery of a threatening communication by mail for purpose of extorting a thing of value.

To convict a defendant under 18 U.S.C. § 876, the Government must prove that the defendant mailed, with intent to extort from any person a thing of value, a communication "addressed to any other person and containing . . . any threat to injure the person of the addressee or of another."  18 U.S.C. § 876(b).

The evidence was sufficient to convict Myers under § 876, because he sought a thing of value through mailed communications by asking for the release of the defendants in the 1994 tax-fraud case and for the judge to cease and desist trying the defendants.  Although he contends that the letters he signed were not threatening, several witnesses testified that the letters were perceived as

8

threatening, and the letters caused the Marshal's Service in the tax-fraud trial to institute increased security measures.  Myers signed several of the letters in his capacity as a "Militia Volunteer," and several of the letters stated that not adhering to the instructions would be considered treason, the penalty for which was death by hanging.  Moreover, a letter indicting several judges in Florida warned that a physical arrest at a home or workplace by the militia could result in a dangerous confrontation.

Counts Twelve and Thirteen.  Corruptly endeavoring to obstruct justice.

To prove a violation of 18 U.S.C. § 1503, the Government must establish (1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly with the specific intent to influence, obstruct, or impede any juror or officer of the court in that judicial proceeding in its due administration of justice.  In *United States v. Aguilar*, the Supreme Court described the interplay between these three elements as a "nexus" requirement—"that the act must have a relationship in time, causation, or logic with the judicial proceeding."  *United States v. Aguilar*, 515 U.S. 593, 599, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995).  "[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding," as opposed to some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority, "he lacks the requisite intent to obstruct."  *Id.*

Here, there was also sufficient evidence to sustain a conviction under § 1503.  The evidence adduced at trial shows that Myers was aware of the 1994 tax-fraud proceeding as he signed several threatening communications that were sent to parties involved in that case.  Moreover, he acted with the intent to influence, obstruct, or impede that judicial proceeding, as evidenced by the content of his communications, which asked the judge in the tax-fraud trial to cease and desist in the proceedings, and sought the arrest of jurors when the parties did not adhere to the cease and desist order.

AFFIRMED.