[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13978
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00421-SCJ-LTW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH ORLANDO HOOD,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 18, 2021)

Before WILSON, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Joseph Hood appeals from his convictions and 468-month total sentence for Hobbs Act robbery, 18 U.S.C. § 1951(a), discharging a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii), and brandishing a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii). Prior to the commencement of trial, the district court ordered that Hood be placed in leg irons to protect the safety and decorum of the courtroom. It also ordered the irons to be taped and the counsel tables to be draped with white cloths. At trial, the government introduced evidence regarding Hood's flight from the scene of a robbery for which he was not charged and his attempted escape from a hospital room after his flight. The two incidents occurred within a week of the robberies that he was charged with but prior to the filing of his indictment. The government also introduced expert fingerprint evidence.

On appeal, Hood argues that: (1) the district court abused its discretion in ordering him to wear leg irons during his trial; (2) the district court abused its discretion in determining that the government's expert fingerprint evidence, which relied on a method known as ACE-V, was sufficiently reliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); (3) the district court abused its discretion in allowing the government to present the evidence of his flight from the

robbery scene and his attempted escape from the hospital room as evidence of his guilt; and (4) his sentence is substantively unreasonable.

I.

We review the district court's decision to require a defendant to wear leg irons at trial for abuse of discretion. *United States v. Mayes*, 158 F.3d 1215, 1219 (11th Cir. 1998). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Khan*, 794 F.3d 1288, 1293 (11th Cir. 2015).

Leg irons should be used "as rarely as possible" because they may undermine the presumption of innocence, confuse the defendant, impair the defendant's ability to confer with counsel, and affect the defendant's trial strategy. *United States v. Durham*, 287 F.3d 1297, 1304 (11th Cir. 2002). The decision to require leg irons "must be subjected to close judicial scrutiny to determine if there was an essential state interest furthered by compelling a defendant to wear shackles and whether less restrictive, less prejudicial methods of restraint were considered or could have been employed." *Id.* Essential state interests include providing physical security, preventing escape attempts, and protecting courtroom decorum. *Deck v. Missouri*, 544 U.S. 622, 628 (2005); *see also Mayes*, 158 F.3d at 1225 (explaining that courtroom security is a competing interest that may justify

3

requiring a defendant to wear leg irons).  The district court must place its reasons for requiring security measures, including leg irons, on the record.  *Durham*, 287 F.3d at 1304.  If the district orders a defendant to wear leg irons "without adequate justification," the shackling is presumptively prejudicial unless the government proves beyond a reasonable doubt that it did not contribute to the jury's verdict. *Deck*, 544 U.S. at 635.

In deciding whether to require leg irons, the district court must assess the particular circumstances of the case.  *Id.* at 632.  In doing so, the district court may consider a number of factors that reasonably bear upon the security of the courtroom or the danger of escape, including the defendant's history and background, the nature of the charges and whether the charges include violent conduct, and prior instances where the defendant disrupted judicial proceedings. *United States v. Baker*, 432 F.3d 1189, 1244 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006).  The district court may also consider the expertise and experience of a U.S. marshal, although it may not rely solely on a marshal's recommendation without independently considering the facts and circumstances of the case.  *Mayes*, 158 F.3d at 1226.

Here, the district court did not abuse its discretion in ordering Hood to be placed in leg irons during his trial.  As an initial matter, a party abandons an issue by failing to prominently raise it in his initial brief, by only raising it in a

perfunctory manner without supporting arguments and authority, or by making only "passing references to it that are background to other arguments or [are] buried within other arguments, or both." *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) (alteration in original) (internal quotation marks omitted). A party also abandons an issue by raising it for the first time in his reply brief. *United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004) (per curiam). Here, Hood has abandoned his argument regarding the discrepancies between the district court's oral and written orders by raising it for the first time in his reply brief. For the same reason, he has also abandoned his argument regarding the government's unsubstantiated claim of his prior escape attempt from a courtroom holding cell.

We also find no abuse of discretion because the district court's shackling order furthered the interests of protecting courtroom security and decorum. To protect those interests, it considered a number of factors that this court has determined to be relevant, including: (1) Hood's criminal history; (2) the nature of Hood's charges, which involved a series of violent armed robberies; (3) Hood's escape attempt from the hospital after his arrest; and (4) Hood's escape attempt from custody while awaiting a judicial proceeding, which the government proffered at the sidebar. It was proper for the district court to also consider the marshal's recommendation, which reflected the marshal's experience, because it

did not rely solely on that recommendation without independently considering Hood's circumstances.

Because the district court's shackling order was adequately justified, this court does not need to address whether the order was harmless beyond a reasonable doubt. *See Deck*, 544 U.S. at 635. We therefore find no abuse of discretion and affirm.

## II.

We review the district court's rulings as to the admissibility of expert testimony and the reliability of an expert opinion for an abuse of discretion. *United States v. Abreu*, 406 F.3d 1304, 1305–06 (11th Cir. 2005) (per curiam).

Federal Rule of Evidence 702 provides that a qualified expert whose knowledge is helpful to the trier of fact may testify if: (1) her "testimony is based on sufficient facts or data"; (2) her "testimony is the product of reliable principles and methods"; and (3) she "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The district court has "wide latitude" in deciding how to determine an expert's reliability under Rule 702. *Abreu*, 406 F.3d at 1307. However, a court generally will consider a number of the factors enumerated in *Daubert*, which include: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific

technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* at 1306–07.

The district court serves a "gatekeeping function" in deciding whether scientific or technical evidence is admissible. *Id.* at 1306 (internal quotation mark omitted). Thus, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *United States v. Barton*, 909 F.3d 1323, 1332 (11th Cir. 2018). Further, the appropriate safeguards against "shaky but admissible evidence" are cross-examination, presentation of contrary evidence, and careful instruction as to the burden of proof. *Daubert*, 509 U.S. at 596.

We have previously upheld the admission of fingerprint evidence as being sufficiently reliable under *Daubert*. *Abreu*, 406 F.3d at 1307. We reasoned that (1) other federal circuits had determined that such evidence was sufficiently reliable under *Daubert*; (2) district courts in general are given broad latitude in deciding how to determine reliability; and (3) the district court had considered information provided by the government regarding the uniform practice followed by fingerprint examiners and the error rate of fingerprint identification. *Id.*

Moreover, a number of federal courts of appeal have determined that fingerprint evidence that relies on the ACE-V method is sufficiently reliable. *See, e.g.*, *United States v. Herrera*, 704 F.3d 480, 484–87 (7th Cir. 2013) (determining

7

that "responsible" fingerprint identification under ACE-V is admissible, even though the method is subjective and is less scientifically rigorous than DNA evidence); *United States v. Pena*, 586 F.3d 105, 110–11 (1st Cir. 2009) (determining that fingerprint evidence based on ACE-V was admissible in light of the consensus among federal courts that the method satisfies *Daubert* despite concerns with the method's subjectivity); *United States v. Baines*, 573 F.3d 979, 989–92 (10th Cir. 2009) (expressing concern as to ACE-V's subjectivity, but noting its "overwhelming acceptance" by experts in the fingerprint industry).

Here, the district court did not abuse its discretion in determining that the expert fingerprint evidence was sufficiently reliable under *Daubert*, which is the only element of *Daubert* that Hood properly challenges on appeal. In determining that the evidence was reliable, the district court acted in accordance with our caselaw and the decisions of other circuits that have upheld such evidence as reliable under *Daubert*, notwithstanding the subjective nature of the ACE-V method. In addition, Hood was able to attack the expert's methodology through cross-examination at trial, and the district court instructed the jury as to the burden of proof and the nature of expert testimony. Accordingly, we affirm as to this issue.

III.

We review the district court's decision to admit evidence of a defendant's flight for abuse of discretion, and that decision will not be overturned "absent a showing of clear abuse." *United States v. Blakey*, 960 F.2d 996, 1001 (11th Cir. 1992).

"Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." *Id.* at 1000. The probative value of a flight evidence depends on the extent to which it allows for the factfinder to make inferential steps: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Borders*, 693 F.2d 1318, 1325 (11th Cir. 1982). Inferences from a defendant's flight must be "made cautiously and with a sensitivity to the facts of the particular case." *Id.*

The probative value of flight evidence is diminished if the defendant was not aware at the time of his flight that he was the subject of a criminal investigation for the particular crime that he was charged with. *Id.* at 1325–26. It is also diminished if there is a significant time delay, such a period of several months, between the time when the defendant becomes aware that he is the subject of a criminal investigation and the time of his flight. *Id.* at 1326.

Also in *Borders*, we determined that neither concern was present where the evidence showed that a conspirator fled a hotel shortly after he learned that law enforcement wished to interview him, was informed that it would be advisable to have counsel present during the interview, and learned that a co-conspirator had been arrested in connection with the subject of the interview. *Id.* at 1323–24, 1326–27; *see also United States v. Beard*, 775 F.2d 1577, 1579, 1581 (11th Cir. 1985) (determining that flight evidence was admissible where the defendants, after observing a law enforcement officer, engaged in a four-mile car chase until they were ultimately pulled over and arrested).

In *United States v. Ramon-Perez*, we determined that flight evidence was admissible where, after being indicted and released on bond, the defendant transferred ownership of his car, quit his job, and moved to another state a little over a month after his indictment had been filed and shortly before a scheduled hearing. 703 F.2d 1231, 1232–33 (11th Cir. 1983) (per curiam). We reasoned that, although "many other reasons other than a flight from justice" could have motivated the defendant's move, he offered no alternative explanation, and the flight occurred several days before the scheduled hearing. *Id.* at 1233. While the time delay between the defendant's indictment and his flight and his careful preparations regarding his car and job lessened the evidence's probative value, those circumstances did not render it inadmissible. *Id.*

Here, the district court did not abuse its discretion in admitting the evidence of Hood's flight from the robbery scene and attempted escape from the hospital as evidence of his consciousness of guilt. It is unclear whether Hood was under investigation at the time of the two incidents. Further, his indictment had not yet been filed. However, the jury could have inferred his consciousness of guilt based on the temporal proximity of the incidents to the charged robberies and the presence of several distinctive items that he possessed at the time of his flight from the robbery scene that tied him to the charged robberies. Therefore, we affirm.

IV.

In determining whether a sentence is reasonable, we apply an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

In reviewing the reasonableness of a sentence, we first consider whether the district court committed any significant procedural error. *Gall*, 552 U.S. at 51. We next consider the substantive reasonableness of a sentence, taking into account the totality of the circumstances. *Id.* On substantive reasonableness review, we will vacate the sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a)

factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).  While we do not presume that a within-guideline sentence is reasonable, we typically expect such a sentence to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).  Also, the fact that a sentence falls well below the statutory maximum is an indicator of a reasonable sentence.  *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016).

The statutory maximum term of imprisonment for a violation of 18 U.S.C. § 1951(a) is 20 years.  18 U.S.C. § 1951(a).  The statutory maximum term of imprisonment for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) or (iii) is life.  *Id.* § 924(c)(1)(A)(ii), (iii).

The district court must impose a sentence that is "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), which include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public from the defendant's further crimes, and providing the defendant with appropriate correctional treatment.  18 U.S.C. § 3553(a)(2).  The district court must also take into consideration the "nature and circumstances" of the offense and the "history and characteristics" of the defendant.  *Id.* § 3553(a)(1).  In addition, the statute directs the district court to consider the types of sentences available, the

12

applicable guideline range, any pertinent policy statement issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(3)–(7). A defendant's criminal history "fits squarely" into the § 3553(a) category that requires the district court to consider the history and characteristics of the defendant. *United States v. Williams*, 526 F.3d 1312, 1324 (11th Cir. 2008) (per curiam).

The district court may "determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." *Irey*, 612 F.3d at 1217. The weight accorded to any one § 3553(a) factor is a matter "committed to the sound discretion of the district court," and it may attach "great weight" to one factor over others. *Rosales-Bruno*, 789 F.3d at 1254. However, a district court's unjustified reliance on a single § 3553(a) factor may be a "symptom" of unreasonableness. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). A district court abuses its discretion and imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189. The district court is not required to explicitly address each of the § 3553(a) factors or

13

all of the mitigating evidence. *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007).

Hood's sentence is substantively reasonable. The fact that his sentence falls well below the statutory maximum applicable to four of his convictions and below his guideline imprisonment range indicates as much. The district court demonstrated that it properly applied several of the 18 U.S.C. § 3553(a) factors in exercising its discretion to vary downward from Hood's guideline imprisonment range, including by considering his difficult upbringing, his lack of remorse for his offense, his extensive and violent criminal history, the impact that his offense had on its victims, the violent nature of his offense, and the danger that he posed to the public. Accordingly, we affirm.

**AFFIRMED.**