# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 4, 2015            Decided July 7, 2015

No. 12-3024

UNITED STATES OF AMERICA,
APPELLEE

v.

HOWARD R. SHMUCKLER,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00102-1)

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Jay Apperson*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen*, *Jr.*, U.S. Attorney at the time the brief was filed, and *Elizabeth Trosman*, *John P. Mannarino*, *Jonathan P. Hooks*, and *Lauren R. Bates*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, TATEL, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

GARLAND, *Chief Judge*: A jury convicted Howard Shmuckler on five counts of bank fraud and five counts of possessing and uttering[1] a counterfeit security with intent to deceive. On appeal, Shmuckler challenges the sufficiency of the evidence supporting one of the counterfeit security counts. Because the government failed to present evidence from which a reasonable jury could have found that the security (a check) was counterfeit, we reverse the conviction on that count. We reject, however, Shmuckler's request that we remand the case for an inquiry into jury selection.

I

Between August 2005 and March 2006, Shmuckler deposited a number of checks that falsely listed him as the payee, in amounts totaling over $1,358,000, into accounts controlled by him and his wife. On July 16, 2010, a grand jury returned a ten-count indictment, charging Shmuckler with five counts of bank fraud, in violation of 18 U.S.C. §§ 2 & 1344, and five counts of possessing and uttering a counterfeit security with intent to deceive, in violation of 18 U.S.C. §§ 2 & 513(a). The ten counts were comprised of one count of bank fraud and one count of possessing and uttering a counterfeit security for each of five transactions. The case went to trial on December 5, 2011.

Count 8 of the indictment charged Shmuckler with possessing and uttering a counterfeit check issued by a

---

[1]*See* Oxford English Dictionary Online, http://www.oed.com (defining "to utter" as "to pass or circulate (base coin, forged notes, etc.) as legal tender"); 1 & 2 Phil. & M., c. 11 (1554-1555) (Eng.) (criminalizing, as High Treason, the import of counterfeit money into the Realm with "the intent to utter or make paiment withe the same within this Realme").

commercial insurance agency, the Young Agency, on or about October 18, 2005.  In support of the charge, the government introduced (inter alia) the testimony of Steven Hickey, the accounting manager for the Young Agency.  Hickey testified that, on September 28, 2005, the Young Agency issued a check for premium payments to American International Company in the amount of $408,000.  He further stated that, on October 19, 2005, SunTrust Bank contacted the Young Agency, advising that the check was presented to the bank but did not clear because SunTrust detected that the payee's name on the check "had been altered fraudulently" to "Howard R. Shmuckler." 12/6/2011 A.M. Tr. 38-42.  The Young Agency then placed a stop payment order on the check and issued a replacement check to American International.  The government also introduced into evidence a copy of the genuine check as issued by the Young Agency, and a copy of the check as deposited by Shmuckler.

The jury convicted Shmuckler on Count 8 and on one count of bank fraud for the same transaction.  It also convicted him on four other counts of possessing and uttering a counterfeit security and four other counts of bank fraud for transactions involving other checks.  On April 5, 2012, the district court sentenced Shmuckler to concurrent sentences of 75 months' imprisonment on each count.  It imposed concurrent, five-year terms of supervised release on the bank fraud counts and concurrent, three-year terms of supervised release on the counterfeit security counts.  Finally, it ordered Shmuckler to pay restitution, as well as a $100 special assessment on each count.

On appeal, Shmuckler challenges his conviction on Count 8.  Although he does not challenge his convictions on the other counts,[2] he requests that we remand the entire case to the district

---

[2]The fact that Shmuckler's prison sentence on Count 8 was set to run concurrently with sentences for his convictions on the other counts

court to inquire into whether there was misconduct in connection with the selection of his jury. We address Count 8 in Part II and the jury issue in Part III.

## II

Shmuckler contends that we must vacate his conviction on Count 8 because it was the result of a prejudicial variance. Specifically, he maintains that the evidence introduced at trial showed at most that the Young Agency check was *forged* -- that is, "falsely altered," 18 U.S.C. § 513(c)(2) -- while the indictment charged that the check was *counterfeit* -- that is, "falsely made or manufactured in its entirety," *id.* § 513(c)(1).

Although both sides briefed and argued this claim under the framework of variance, Shmuckler's claim is more readily analyzed as an ordinary sufficiency-of-the-evidence challenge. A variance between a crime charged in the indictment and the evidence introduced at trial "requires reversal of a conviction only if the defendant suffered prejudice as a consequence." *United States v. Cross*, 766 F.3d 1, 5 (D.C. Cir. 2013) (citing, inter alia, *Berger v. United States*, 295 U.S. 78, 82 (1935)). Here, if the evidence was insufficient to support Shmuckler's conviction for possessing and uttering a counterfeit check, that alone would constitute sufficient prejudice to require reversal, *see id.*, and nothing would be added by calling the situation a variance. Conversely, if the evidence was sufficient to support that conviction, there was no prejudicial variance and hence no ground for reversal. Both parties agree with this analysis. *See* Oral Arg. Recording at 8:18-50 (defense counsel); *id.* at 32:14-56 (government counsel).

---

does not affect our duty to review his challenge to that count. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985); *United States v. McLaughlin*, 164 F.3d 1, 16 (D.C. Cir. 1998).

Shmuckler preserved the sufficiency-of-the-evidence issue for our review by filing the requisite motion for judgment of acquittal in the district court. *See* 12/8/2011 Tr. 92-93; *see also United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998) (holding that "a 'broadly stated' motion for judgment of acquittal 'without specific grounds' is 'sufficient to preserve [a] full range of challenges . . . to the sufficiency of the evidence'" (quoting *United States v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir. 1995))). He has also raised the issue on appeal. We therefore proceed to consider whether there was sufficient evidence to conclude that the Young Agency check Shmuckler deposited was counterfeit, without pausing over the parties' dueling variance arguments. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime" -- here, that the check was counterfeit -- "beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).

Under 18 U.S.C. § 513, it is illegal to "utter[] or possess[] a counterfeited security . . . [or] a forged security . . . with intent to deceive another person, organization, or government." 18 U.S.C. § 513(a). Section 513 defines a "counterfeited" document as one "that purports to be genuine but is not, because it has been falsely made or manufactured *in its entirety*." *Id.* § 513(c)(1) (emphasis added). It defines a "forged" document as one "that purports to be genuine but is not because it has been falsely *altered*, completed, signed, or endorsed, or contains a false addition thereto or insertion therein, or is a combination of parts of two or more genuine documents." *Id.* § 513(c)(2) (emphasis added).[3]

---

[3]The government argues that there is not a hard dichotomy between "forged" and "counterfeited," and that even when the evidence shows only that a security was falsely altered, that can still

Ordinarily, the difference between a "counterfeited" security and a "forged" security should not matter because the statute makes it a crime to possess (or utter) either one with intent to deceive. Thus, if the government had charged Shmuckler with possessing a counterfeit *or* a forged check, it would have been entitled to prove either at trial.[4] But the government did not charge Shmuckler with possessing a counterfeit *or* a forged check. It simply charged him with possessing a counterfeit check, full stop. "By the way the government chose to frame [the] indictment," it made a counterfeit check "an essential part of the charge and limited the bas[i]s for possible conviction" to the possession of such a check. *United States v. Leichtnam*, 948 F.2d 370, 379 (7th Cir. 1991). Accordingly, the question before us is whether there was

---

support a conviction for a counterfeit security if "'all the essential information was falsified.'" Gov't Br. 36-37 (quoting *United States v. Blakey*, 960 F.2d 996, 999-1000 (11th Cir. 1992)). Whether or not the government is correct, there is no evidence that all the essential information on the Young Agency check was altered. As we recount below, the only apparent difference between the check as issued and as deposited is the payee information. *Cf. Blakey*, 960 F.2d at 999 (finding that a check had been counterfeited when it had been transformed from a $5.00 check drawn in 1983, to a $35,000 cashier's check with a 1987 date and a false authorizing signature).

[4]We use the disjunctive "or" for clarity, although such an indictment would actually have charged the defendant in the conjunctive to provide the defendant with sufficient notice of what he had to defend against. Thus, the indictment would actually have charged the defendant with possessing a counterfeit check *and* a forged check. *See* DEP'T OF JUSTICE, U.S. ATTORNEY'S MANUAL: CRIMINAL RESOURCE MANUAL § 227 (1997). The jury instruction would then have permitted the jury to convict upon proof that the defendant possessed either a counterfeit *or* a forged check. *See United States v. Baxter*, 761 F.3d 17, 25 n.7 (D.C. Cir. 2014); *United States v. Coughlin*, 610 F.3d 89, 106 (D.C. Cir. 2010).

sufficient evidence for a rational juror to have concluded beyond a reasonable doubt that the Young Agency check Shmuckler deposited was counterfeit -- i.e., that it was a document "falsely made or manufactured in its entirety," rather than an otherwise genuine document that was simply "falsely altered," 18 U.S.C. § 513(c).

To prove that the check Shmuckler deposited was counterfeit, the government might have introduced both that check and the original check the Young Agency issued. If there were in fact two different, physical checks, the jury could then readily have concluded that the check Shmuckler deposited must have been a different document, falsely made or manufactured in its entirety. But the government did not introduce the actual checks. It introduced only copies, Oral Arg. Recording at 21:01-32, and it is not possible to tell by comparing them whether the deposited check was an alteration of the original or an entirely new document, *compare* Gov't Trial Ex. 64 (J.A. 32), *with* Gov't Trial Ex. 9E (J.A. 33).

The government might also have sought to prove that the check deposited by Shmuckler was counterfeit by calling attention to aspects of that check that would have indicated its counterfeit nature. *Cf. Spinner*, 152 F.3d at 958 (finding insufficient evidence to sustain a firearms conviction where the jury was left "without any testimonial guidance [to] determine[] that the weapon satisfied the applicable statutory requirements" (citing *United States v. Meadows*, 91 F.3d 851 (7th Cir. 1996))). But the government did not do this either. Indeed, the only obvious difference between the check copies is that one is made out to American International Company and the other is made out to Howard R. Shmuckler. That difference does not resolve whether the discrepancy is due to forgery or counterfeiting.

We are therefore left to consider the evidence that the government *did* present to the jury. The only such relevant evidence was the testimony of Steven Hickey. That testimony does not help the government on this issue either.[5]

Hickey repeatedly testified that the check with Shmuckler's name on it had been fraudulently "altered," 12/6/2011 A.M. Tr. 38, which is the definition of forgery rather than counterfeiting, *see* 18 U.S.C. § 513(c). The only difference that Hickey said he observed in examining copies of the check issued by the Young Agency and the one deposited by Shmuckler is the same difference we observe: the changed payee name. *See* 12/6/2011 A.M. Tr. 40-41. Indeed, after Hickey told the prosecutor that the "payee name had been altered," *id.* at 38; *see id.* at 40, the prosecutor asked whether "any other part of the check [had] been altered." His answer was "no." *Id.* at 41.

The government draws our attention to Hickey's testimony that "[t]he original check was presented to the bank," *id.* at 39. It maintains that this suggests that both the original, unaltered check and the false check were presented to the bank, which would in turn suggest that the false check was an entirely new document. Gov't Br. 36. But this takes Hickey's statement out of context. Hickey's other testimony, both preceding and following the statement cited by the government, indicates that,

---

[5]In a footnote, the government argues that the jury could have considered two other kinds of evidence: (1) testimony concerning other counterfeit checks deposited by Shmuckler, and (2) testimony "regarding a scam commonly referred to in the banking industry as the 'Nigerian cashier's check scam' where individuals would create counterfeit checks by 'get[ting] a copy of a check and alter[ing] it.'" Gov't Br. 34 n.17. None of this testimony, however, bears on whether the *Young Agency* check (as opposed to some other check) was counterfeit.

when he used the term "original check," he meant the "original check that . . . had been fraudulently altered and presented for payment to the bank," 12/6/2011 A.M. Tr. 38, and not the original check that had been issued by the Young Agency. In context, he used the term "original check" to distinguish the altered check from the "replacement check" that the Young Agency issued after it stopped payment on the altered check, *id.* at 38-39. The government's reading of Hickey's testimony is at best speculative, and speculation cannot sustain a jury verdict. *See United States v. Gaskins*, 690 F.3d 569, 578 n.3 (D.C. Cir. 2012); *United States v. Teffera*, 985 F.2d 1082, 1085, 1088 (D.C. Cir. 1993). We therefore conclude that there was insufficient evidence for a jury to find that the Young Agency check was counterfeit and hence insufficient evidence to sustain his conviction on Count 8.[6]

## III

In this part, we address Shmuckler's two jury-related contentions.

## A

Shmuckler first contends that the district court plainly erred by failing to sua sponte conduct a hearing to inquire into a matter that arose after his jury was selected. As a remedy, he asks us to remand the case for such an inquiry.

Jury selection for Shmuckler's trial took place on Friday, December 2, 2011. One of the forty-five prospective jurors who

---

[6]Shmuckler agrees, however, that the government did proffer sufficient evidence that the checks underlying the other four counts of the indictment were counterfeit rather than forged. Oral Arg. Recording at 15:40-16:11.

participated, Juror 1547, indicated during voir dire that he worked "in an environment with a lot of attorneys and dealt with legislation dealing with banking issues," 12/2/2011 Tr. 40-41; that he had daily contact with the Secret Service and U.S. Capitol Police, *id.* at 45; and that he had a "very frustrating" experience in which fraudulent checks were written on his bank account, *id.* at 173-75. The district court denied Shmuckler's motion to strike Juror 1547 for cause, but Shmuckler later used one of his peremptory strikes to knock the juror out of the jury pool.

At the end of voir dire, the courtroom clerk called the number of each prospective juror who had been selected for the jury. Juror 1547, who had been struck, was not among them. Nonetheless, Juror 1547 ended up seated in the jury box, in a seat that was supposed to be occupied by Juror 0514. After the district court dismissed the panel -- instructing those who were selected to report back to court on December 5 for the start of the trial, and instructing those who were not selected to return to the jurors' lounge on their way out -- the prosecutor alerted the district court to Juror 1547's erroneous presence in the jury box. The district court then directed the courtroom clerk to call Juror 0514 (who had not reported to the jurors' lounge on her way out) and instruct her to be in court on December 5 for the start of trial, and to call Juror 1547 and instruct him not to return to court.

As instructed, Juror 0514 reported to court for trial on Monday, December 5. She was sworn in with the rest of the jury and served without further incident. As also instructed, Juror 1547 did not report and had no role in the trial.

Shmuckler acknowledges that, because he did not raise a timely objection or claim of juror misconduct with the district court, our review must proceed under the plain error standard.

Shmuckler Br. 23; *see* FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993). This means that Shmuckler has the burden of showing that there is "'(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Simpson*, 430 F.3d 1177, 1183 (D.C. Cir. 2005) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal citations and quotation marks omitted)). In most cases, to affect the defendant's substantial rights, "'the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" *Id.* at 1183-84 (quoting *Olano*, 507 U.S. at 734).[7]

Shmuckler maintains that the district court should have recognized that it was required to hold a hearing to "determine the circumstances of the switch and whether the circumstances implicate juror bias." Shmuckler Br. 24-27. Not so. Although a hearing is ordinarily required to determine "the prejudicial effect of uncontested misconduct," district courts have "broad discretion" to consider the "strength and seriousness of the

---

[7]The government acknowledges that, ordinarily, claims that are not timely raised in the district court are considered forfeited and reviewed for plain error. *See Olano*, 507 U.S. at 733. It contends, however, that the failure to timely raise a claim of juror bias should be regarded as a waiver, precluding any appellate review at all. Gov't Br. 14-16 (citing, e.g., *United States v. Rowe*, 144 F.3d 15, 20-21 (1st Cir. 1998) (holding that such a claim is "waived," without distinguishing between waiver and forfeiture)). *But see Olano*, 507 U.S. at 733 ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)). We do not address this contention because Shmuckler's claim fails even under the plain error standard.

allegations" and decide how to investigate when it is not clear that misconduct occurred at all. *United States v. White*, 116 F.3d 903, 929-30 (D.C. Cir. 1997).

The person who was properly selected for the jury -- Juror 0514 -- *did* sit on the jury. The person who was mistakenly in the jury box on the Friday before the trial began -- Juror 1547 -- *did not*. As Shmuckler recognizes, his theory that the juror mix-up was not an innocent mistake, but rather part of some scheme that involved Juror 0514, is based on speculation. *See* Oral Arg. Recording at 4:03-09; *see also id.* at 3:02-4:01 (statement by Shmuckler's counsel offering "speculative scenarios" in which Juror 0514 and Juror 1547 might have colluded; or in which Juror 0514 might have attempted to avoid jury duty and, having failed, then voted to convict Shmuckler to curry favor with the government).[8] But "[d]efense 'counsel's unsubstantiated suspicion' does not, on its own, require the district court to conduct jury questioning." *United States v. Gibson*, 353 F.3d 21, 26 (D.C. Cir. 2003) (quoting *United States v. Thornton*, 746 F.2d 39, 50 (D.C. Cir. 1984)).

B

Nearly a year after the jury announced its verdict against him, and after he had noticed his appeal, Shmuckler filed a post-judgment motion in the district court seeking to interview Juror 0514 pursuant to Local Criminal Rule 24.2(b). Once a jury has been discharged, that rule authorizes -- but does not require --

---

[8]*See also* Shmuckler Br. 25, 27 (stating that "[t]he court and parties did not know why or how the switch occurred," and that, "[*i*]*f* the switch was due to Juror 0514's effort to evade serving as a juror, conduct that is punishable as contempt, . . . [she] *might* have been motivated . . . to convict based on a desire to curry favor with the party responsible for prosecuting that contempt" (emphasis added)).

the district court to grant such a request "for good cause shown." D.D.C. Crim. R. 24.2(b). The district court denied the motion in a Minute Order, finding (inter alia) that Shmuckler failed to show good cause because the facts he alleged "d[id] not plausibly reflect possible misconduct." Minute Order, *United States v. Shmuckler*, No. 10-cr-00056 (D.D.C. Feb. 5, 2013) (J.A. 25).

Shmuckler did not appeal that order. Instead, he filed a motion in this court to remand the case so that he could refile his Rule 24.2(b) motion with the district court, this time providing more detail as to why it should be granted. In particular, he suggested that he could "explain[] in greater detail the unusual conduct during the impaneling of the jury." Mot. to Remand 2, *United States v. Shmuckler*, No. 12-3024 (D.C. Cir. Mar. 15, 2013) (J.A. 50). A special panel of this court directed the parties to include a discussion of the motion in their merits briefs. That motion is now before us.

In the time between filing his motion to remand and filing his merits briefs, Shmuckler seems to have changed tack. He now argues that we should remand the case, not because he has more detail to include in his interview motion, but because the district court erred in concluding that he had failed to show good cause in the first place. *Compare* Mot. to Remand 2, *with* Shmuckler Br. 33. In light of the discussion above, we find both tacks unavailing. The district court did not abuse its discretion in finding that Shmuckler had failed to show good cause to conduct an interview. Indeed, in his original motion, Shmuckler did nothing more than describe the factual circumstances of the seating of the jurors. *See* Mot. for Authorization, *United States v. Shmuckler*, No. 10-cr-00056 (D.D.C. Feb. 5, 2013) (J.A. 45-46). Nor does Shmuckler now describe any more detail that he wishes to add. *See* Mot. to Remand 2.

14

IV

For the foregoing reasons, we vacate Shmuckler's conviction on Count 8 and remand the case to the district court for further proceedings consistent with this opinion. We affirm the district court's judgment in all other respects and deny Shmuckler's request to remand for an inquiry into jury selection.

*So ordered.*